

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-08-276-CR**

SAMUEL LEE HILBURN                                      APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## OPINION

------------

### I. Introduction

Appellant Samuel Lee Hilburn appeals his conviction for intoxication manslaughter.[1] He contends in four points that the evidence is legally and factually insufficient to prove beyond a reasonable doubt that he caused a police officer's death "by driving his vehicle into and against" the officer's patrol car or that his vehicle constituted a deadly weapon. We affirm.

---

[1] *See* Tex. Penal Code Ann. § 49.08(a) (Vernon Supp. 2009).

## II. Factual Background

In the early morning hours of December 17, 2006, Adriana Delgadillo was driving south on Interstate 35 in Fort Worth when she noticed her car had a flat tire. She pulled onto the right shoulder of the highway and called a friend, Roy Delgado, to assist her. Delgado arrived within five minutes and parked his pickup truck on the shoulder in front of Delgadillo's car. Delgado tried to remove the tire but could not because it had a lock on it, so Delgadillo called for roadside assistance.

Fort Worth Police Officer Dwayne Freeto arrived shortly thereafter and parked his patrol car on the shoulder behind Delgadillo's car, but he left his patrol car's emergency lights on while he also tried to remove the flat tire from Delgadillo's car. Officer Freeto was also unable to remove the tire, so he told Delgadillo he would wait until roadside assistance arrived. Officer Freeto went back to his patrol car, and Delgadillo and Delgado sat in Delgadillo's car to wait for roadside assistance. While they waited, Appellant's car rear-ended Officer Freeto's patrol car. Officer Freeto's patrol car immediately erupted into flames, with Officer Freeto trapped inside. Delgado exited Delgadillo's car, ran back to the patrol car, and unsuccessfully tried to break the driver-side window with his fists. He then retrieved the vehicle jack from Delgadillo's car and used it to break the passenger-side window on the patrol car.

Officer Rockney Malone, a Fort Worth vice officer whose shift had ended at 3:00 a.m., was driving home from work when Appellant's vehicle passed him at a

2

high rate of speed.[2]  Officer Malone watched Appellant's vehicle crash into Officer Freeto's patrol car, causing an instant explosion.  Officer Malone pulled over and saw Appellant get out of his car, take a couple steps, fall down, and roll onto his back.  Officer Malone dragged Appellant onto the shoulder of the road and ran to Officer Freeto's patrol car but could not see inside because of the smoke.  Another driver, Jimmy Ozuna, also stopped to help, and Officer Malone, Delgado, and Ozuna tried to break the patrol car's windows to rescue Officer Freeto from the fire.  Ozuna testified that he could see Officer Freeto moving inside the patrol car.

Robert McDonald, a certified EMT, drove up to the scene and stopped to help. McDonald sprayed a small fire extinguisher through the broken passenger window. The fire extinguisher helped only momentarily; the fire completely engulfed the patrol car.  The paramedics on the scene then pulled everyone back from the patrol car and said there was nothing more anyone could do.

McDonald then turned his attention to Appellant.  McDonald could see that Appellant had cuts and abrasions on his hands and arms and burns on his face and head.  Appellant was conscious, coherent, and answered McDonald's questions appropriately without slurring his words, but McDonald could smell the odor of alcohol on Appellant's breath.  Appellant was taken to the hospital for treatment of his injuries.  While he was there, hospital nurses took samples of Appellant's blood

---

[2] ... Two other witnesses testified that Appellant's car had passed them at a high rate of speed just before colliding with Officer Freeto's patrol car.

3

at the investigating officer's request. The toxicologist testified that, based on the blood draws, she believed Appellant had a blood-alcohol level between 0.18 and 0.22 at the time of the collision.

At Appellant's trial, accident reconstructionist Tim Lovett testified that Appellant was driving more than ninety-seven miles per hour at the time of the collision. Lovett testified that the emergency lights on Officer Freeto's patrol car would have been visible at a distance of 1,250 feet, meaning Appellant, even at ninety-seven miles per hour, had more than eight seconds to take action to avoid a collision with Officer Freeto's patrol car. Despite the reaction time, Lovett saw no physical evidence that Appellant had tried to brake or steer evasively to avoid the collision. Lovett also testified that the patrol car had caught fire because Appellant drove his vehicle into the back of the patrol car.

The chief medical examiner for Tarrant County, Dr. Nizam Peerwani, testified at trial that Officer Freeto was alive when the fire in his patrol car started and that he had died from inhaling hot air, poisonous gases, fumes, and smoke. He stated that Officer Freeto did not die of blunt force trauma, but he also testified that Officer Freeto had "died as a result of the impact which – which caused the fire." Dr. Peerwani testified that the official cause of death was a motor vehicle collision with fire.

Ashley Woodall, Lauren Coffman, and Daniel Escamilla testified for Appellant at trial. They explained that the three of them and Appellant had gone to two

4

different clubs in Fort Worth beginning at around 11 p.m. and ending at around 3 a.m. They testified that they saw Appellant drink one beer that evening and that Appellant did not appear to be intoxicated or show any outward signs of being intoxicated.

### III. Procedural Background

A grand jury indicted Appellant in March 2007. The indictment alleged that Appellant had "operate[d] a motor vehicle in a public place while intoxicated, and did by reason of such intoxication cause the death of another, Dwayne Freeto, through accident and mistake, namely: by driving said motor vehicle into and against a motor vehicle occupied by the said Dwayne Freeto." The indictment also alleged that Appellant had used his motor vehicle as a deadly weapon. Appellant pleaded not guilty, but at the conclusion of his jury trial, the jury returned a verdict of guilty, answered affirmatively to the deadly weapon special issue, and assessed punishment at thirteen years' confinement. The trial court sentenced Appellant accordingly.

### IV. Standards of Review

#### A. Legal Sufficiency

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99

5

S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

## B. Factual Sufficiency

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*,

6

280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

## V. Analysis

### A. Alleged Variance Between Indictment and Proof

Appellant contends in his first and second points that the evidence is legally and factually insufficient to prove he caused Officer Freeto's death by "driving his vehicle into and against" Officer Freeto's patrol car. Appellant argues the indictment

7

required the State to prove Officer Freeto died from the impact between the vehicles and contends the State proved Officer Freeto died from the fire, not the impact. Appellant therefore argues there is a fatal variance between the indicted offense and the proof adduced at trial.

A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). In a variance situation, the State proves the defendant guilty of a crime, but proves the crime's commission in a manner that differs from the allegations in the charging instrument. *Id.* But not all variances are material or fatal. *Id.* at 257. A variance between the wording of an indictment and the evidence presented at trial is fatal only if it is material and prejudices the defendant's substantial rights. *Id.*; *see Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002). In reviewing the materiality of such a variance, we must determine whether the variance deprived the defendant of notice of the charges and whether the variance subjects the defendant to the risk of being prosecuted later for the same crime. *Fuller*, 73 S.W.3d at 253; *Gollihar*, 46 S.W.3d at 257.

In *Megas v. State*, Megas argued there was a fatal variance between his indictment and the proof at his trial because the indictment charged him with causing his passenger's death by colliding into a concrete barrier but the evidence at trial suggested the passenger died when Megas's car landed on her. 68 S.W.3d 234,

8

241 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).  Rejecting Megas's fatal

variance argument, the court explained:

> The medical examiner testified the injuries that killed [the passenger] were caused by the car's colliding with the concrete barrier. Officer Leslie Stafford testified that the car collided with the concrete barrier, causing [the passenger] to be partially ejected out of the car, and that when the car flipped on its roof, it rolled on top of [the passenger] and crushed her.  Stafford also testified that the car would not have flipped over and crushed [the passenger] if [Megas] had not hit the concrete barrier with his car.
>
> The cause of [the passenger's] death is directly related to appellant's striking the concrete barrier.  The indictment charges the cause of death as colliding with the barrier, and the evidence shows the collision did cause the death of [the passenger].  The variance is not material.

*Id.* (citations omitted).

Here, the indictment alleged in relevant part that Appellant had caused Officer

Freeto's death by driving his motor vehicle "into and against a motor vehicle

occupied by the said Dwayne Freeto."  Although the medical examiner testified that

Officer Freeto did not die from blunt force trauma, the medical examiner explained

that Officer Freeto had "died as a result of the impact which – which caused the fire."

The accident reconstructionist similarly testified Officer Freeto's patrol car had

caught fire because Appellant drove his vehicle into the back of the patrol car.  Even

assuming the indictment's "into and against" language required the State to prove

the impact between the two vehicles caused Officer Freeto's death, we hold the

variance, if any, between the indictment and the proof adduced at trial is not

9

material.[3]  *See id.*  Moreover, Appellant has not explained how the alleged variance prevented him from preparing a defense or how he could be prosecuted again under the same facts.  *See Fuller*, 73 S.W.3d at 253; *Megas*, 68 S.W.3d at 241.  We will therefore disregard the alleged variance in determining whether the evidence is sufficient to prove Appellant caused Officer Freeto's death by driving his vehicle "into and against" Officer Freeto's patrol car.

### 1.  The Evidence is Legally Sufficient

A person commits intoxication manslaughter if the person (1) operates a motor vehicle in a public place, (2) is intoxicated, and (3) by reason of that intoxication causes the death of another by accident or mistake.  Tex. Penal Code Ann. § 49.08. Appellant argues only that the evidence is legally insufficient to prove he caused Officer Freeto's death "by driving his vehicle into and against" Officer Freeto's patrol car; he does not contend the evidence is legally insufficient to prove that he operated a motor vehicle in a public place, that he was intoxicated, or that his intoxication caused him to drive his vehicle into Officer Freeto's patrol car.

The record contains legally sufficient evidence that Appellant caused Officer Freeto's death "by driving his vehicle into and against" Officer Freeto's patrol car. Two witnesses, Officer Malone and Ozuna, testified that they had seen Appellant's

---

[3] ... Because we hold the variance, if any, is not material, we do not address whether the alleged variance prejudiced Appellant's substantial rights.  *See Gollihar*, 46 S.W.3d at 246 (holding variance fatal only if it is material and prejudices the defendant's substantial rights).

car collide into the rear of Officer Freeto's patrol car and that they saw an immediate explosion. Lovett, the accident reconstructionist, testified that the impact between Appellant's vehicle and Officer Freeto's patrol car had caused the fuel in the patrol car's fuel tank to spray out of the fuel tank. The escaping fuel ignited from sparks caused by metal scraping the roadway or from contact with hot exhaust pipes. Lovett testified that the flames were a direct result of the impact between Appellant's vehicle and Officer Freeto's patrol car. Dr. Peerwani testified that Officer Freeto had "died as a result of the impact . . . which caused the fire."

Viewing the evidence in a light most favorable to the prosecution, a rational jury could have determined beyond a reasonable doubt that Appellant had caused Officer Freeto's death "by driving his vehicle into and against" Officer Freeto's patrol car. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We hold the evidence was legally sufficient to support the jury's verdict. We overrule Appellant's first point.

### 2. The Evidence is Factually Sufficient

Reviewing all the evidence in a neutral light, we recall that Officer Freeto's patrol car was a Ford Crown Victoria and that the State's expert acknowledged a past problem with Crown Victorias exploding when hit from behind. Moreover, Dr. Peerwani testified that Officer Freeto was alive when the fire in his patrol car started and that he did not die of blunt force trauma; Dr. Peerwani explained that Officer Freeto had died from inhaling hot air, poisonous gases, fumes, and smoke.

11

However, Dr. Peerwani also testified that the official cause of death was a motor vehicle collision with fire and that Officer Freeto had "died as a result of the impact which – which caused the fire." Officer Malone and Ozuna testified the explosion had occurred immediately upon impact, Delgado testified the patrol car was already on fire before it collided with Delgadillo's car, and Lovett testified the fire would not have occurred without the impact. Lovett also testified that the recall for the fire problem in Crown Victorias was for the 1999 through 2003 models and that Officer Freeto's Crown Victoria was a 2005 model.

Viewing the evidence in a neutral light, we conclude a rational trier of fact could have found beyond a reasonable doubt that Appellant had caused Officer Freeto's death "by driving his vehicle into and against" Officer Freeto's patrol car. We cannot say that the evidence is so weak that the jury's determination was clearly wrong or manifestly unjust or that the conflicting evidence so greatly outweighs the evidence supporting the conviction that the jury's determination is manifestly unjust. *See Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. We therefore hold the evidence was factually sufficient to support the jury's verdict. We overrule Appellant's second point.

## B.  Appellant's Vehicle as a Deadly Weapon

Appellant argues in his third and fourth points that the evidence was legally and factually insufficient to prove beyond a reasonable doubt that his vehicle constituted a deadly weapon. A deadly weapon is anything that in the manner of its

12

use or intended use is capable of causing death or serious bodily injury. Tex. Penal Code Ann. § 1.07(a)(17) (Vernon Supp. 2009). "It is reasonably clear that driving an automobile constitutes the use of it and that driving [an automobile] in a manner capable of causing death or serious bodily injury constitutes [the automobile] a deadly weapon." *Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995).

### 1. Appellant's Contentions

Appellant concedes a motor vehicle can be a deadly weapon. Instead, he argues there can be no "intended use" of the motor vehicle when the indictment alleges the offense occurred through "accident and mistake." However, the court of criminal appeals decided this issue to the contrary in *Walker v. State*. *See* 897 S.W.2d 812, 813–14 (Tex. Crim. App. 1995). Walker argued that "there can be no affirmative finding of a deadly weapon in a prosecution for involuntary manslaughter by accident or mistake from the intoxicated operation of a motor vehicle" because an affirmative finding requires "some intent or desire to use the instrument of death as a weapon." *Id.* at 813. The court of criminal appeals disagreed and held that "it is evident that not all deadly weapons need be used with an intent to achieve a specific purpose" and that to support an affirmative deadly weapon finding, "no intent to use the automobile as a weapon need be shown." *Id.* at 814; *see also Dotson v. State*, 146 S.W.3d 285, 299–300 (Tex. App.—Fort Worth 2004, pet. ref'd) (rejecting the appellant's contention that a deadly weapon finding is improper merely because offense of manslaughter requires less than intentional conduct).

Appellant also contends his motor vehicle was not a deadly weapon because Officer Freeto died from the fire, not the impact from Appellant's vehicle. First, Appellant ignores the evidence that the fire that killed Officer Freeto would not have occurred had Appellant not driven his vehicle into the back of Officer Freeto's patrol car. Second, Appellant omits that the definition of a deadly weapon under section 1.07(a)(17)(B) includes "anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury." (emphasis added) *See* Tex. Penal Code Ann. § 1.07(a)(17)(B). There is no requirement that the deadly weapon actually cause death or serious bodily injury before the jury can affirmatively answer the deadly weapon question. *See id.*; *see also McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (holding section 1.07(a)(17)(B)'s "plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury"); *Rivera v. State*, 271 S.W.3d 301, 304 (Tex. App.—San Antonio 2008, no pet.) (stating knife that did not cause death or serious bodily injury could be deadly weapon if "the actor intended a use of the knife in which it would be capable of causing serious bodily injury"). Here, even assuming Appellant's vehicle did not cause Officer Freeto's death, the question for the jury was whether Appellant used or intended to use his vehicle in a manner *capable* of causing death or serious bodily injury, not whether Appellant's vehicle actually

14

caused Officer Freeto's death. *See McCain*, 22 S.W.3d at 497; *Rivera*, 271 S.W.3d at 304.

### 2. The Evidence is Legally Sufficient

To determine whether the evidence supports an affirmative deadly weapon finding in cases involving motor vehicles, we conduct a two-part analysis. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009). We first "evaluate the manner in which the defendant used the motor vehicle during the felony." *Id.* We then "consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Id.*

Here, the jury heard testimony that, before getting onto the interstate, Appellant sped past a tow truck, almost hitting the tow truck before swerving to avoid a collision and that Appellant drove erratically on Interstate 35 just before the collision, moving from the far right lane to the far left lane, back again to the far right lane, and then onto the shoulder where Officer Freeto's patrol car was parked with its emergency lights flashing. Lovett testified Appellant's vehicle was traveling in excess of ninety-seven miles per hour at the time of impact. Lovett and Officer Malone also testified Appellant did not hit his brakes before the impact. The jury also heard testimony that Appellant's vehicle did, in fact, cause Officer Freeto's death; Lovett testified the patrol car had caught fire because Appellant drove his vehicle into the back of the patrol car, and Dr. Peerwani testified Officer Freeto had died as a result of the impact that caused the fire.

15

Viewing the evidence in a light most favorable to the prosecution, a rational jury could have determined beyond a reasonable doubt that Appellant used or intended to use his vehicle in a manner capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17); *Sierra*, 280 S.W.3d at 256 (holding evidence of deadly weapon legally sufficient when defendant exceeded speed limit, failed to maintain control of his SUV, and in fact caused serious bodily injury to another); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We hold the evidence was legally sufficient to support the jury's verdict, and we overrule Appellant's fourth point.

### 3. The Evidence is Factually Sufficient

In addition to the evidence discussed above, Appellant introduced evidence that driving above the speed limit, standing alone, does not make a motor vehicle a deadly weapon. For example, Officer Malone testified that driving seventy miles per hour in a straight line within the traffic lane is not reckless. Lovett similarly testified that driving seventy-five miles per hour in a sixty mile per hour speed zone might or might not make a vehicle a deadly weapon, depending on the way the vehicle is driven. However, Officer Malone testified he believed Appellant's vehicle was a deadly weapon because of the way Appellant was driving. Officer Malone testified that just before the collision, Appellant drove his vehicle at a high rate of speed and veered from the far right lane to the far left lane, back again to the far right lane, and then onto the shoulder where Officer Freeto's patrol car was parked with its emergency lights flashing. Officer Malone specifically recalled thinking when he saw

16

Appellant speed past him that Appellant would kill someone driving like that. And Lovett testified that Appellant was driving more than ninety-seven miles per hour in a sixty mile per hour zone and testified, "At that speed, in that manner, this vehicle is easily a deadly weapon."

Viewing the evidence in a neutral light, we conclude a rational trier of fact could have found beyond a reasonable doubt that Appellant used or intended to use his vehicle in a manner capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17). We cannot say that the evidence is so weak that the jury's determination was clearly wrong or manifestly unjust or that the conflicting evidence so greatly outweighs the evidence supporting the conviction that the jury's determination is manifestly unjust. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. We hold the evidence was factually sufficient to support the jury's verdict, and we overrule Appellant's third point.

## VI. Conclusion

Having overruled each of Appellant's four points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED: April 15, 2010

17