COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 2-09-036-CR

 

 


 
 
 LISA KIM COOK A/K/A LISA K. KLOVSTAD
 
 
  
 
 
 APPELLANT
 
 


 

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 372ND
 DISTRICT COURT OF TARRANT
COUNTY

 

OPINION

 

------------

 

I.  Introduction

          Appellant
Lisa Kim Cook a/k/a Lisa K. Klovstad waived her right to a jury and pleaded
guilty to intoxication manslaughter.  The
indictment included a paragraph alleging that Cook used her vehicle as a deadly
weapon during the commission of the offense.  As part of her plea, Cook elected to have the
trial court resolve the deadly weapon issue at the punishment hearing.  In two points, Cook contends that the
evidence is legally and factually insufficient to support the trial court’s
finding that she used her vehicle as a deadly weapon.  We will affirm.

II.  Background

On
the evening of May 11, 2006, at approximately 6:30 p.m., Mr. Claudio Ochoa was
mowing the front lawn of his residence in Fort Worth.  Ochoa had almost completed the task and was
nearing the front curb of the lawn.  Cook
was traveling north on Meadow Park Drive in her Nissan Pathfinder.  Ochoa’s home was located on the southeast
corner at the intersection of Meadow Park Drive and Whitney Drive just after a
slight curve on Meadow Park Drive.  As
Cook approached this curve, she took her eyes off the road and began adjusting
her CD player.  Cook’s SUV ran up onto
the curb into Ochoa’s lawn and drove into Ochoa, knocking him onto the hood of
her SUV.  Cook continued to drive through
the front yard of Ochoa’s residence, north across Whitney Drive, and through
the lawn of another residence across the street.  Cook’s SUV finally stopped after striking an
unoccupied Isuzu Rodeo parked in the driveway of that residence.  Ochoa and his lawnmower also ended up in the
yard of the residence across the street.

          After the accident, Cook got out of
her car and began apologizing and stating that she swerved off the road in an
attempt to avoid another vehicle.  Ochoa’s
family and other witnesses were at the scene almost immediately.  Ochoa was lying in the front yard of the
residence, curled into the fetal position.

          Within minutes, Officer Dennis Russell
of the White Settlement Police Department arrived at the scene.  Russell checked Ochoa’s vital signs and after
detecting no pulse or breathing, requested assistance.  The White Settlement Fire Department arrived
and managed to revive Ochoa.  Ochoa was
transported to a hospital, where he later died.

          Russell stayed on the scene to
complete an accident report.  He
requested that Cook provide him with her driver license and insurance card for
completion of the report, at which time Cook informed Russell that those items
were located inside her purse, which was still in her vehicle.  Russell requested permission to look inside
Cook’s vehicle to obtain the items, and Cook consented.  Russell went to retrieve Cook’s purse from her
SUV and immediately detected a strong odor of beer upon opening the driver’s
side door.  Other officers on the scene
detected the same scent on Cook. 
Permission was obtained from Cook to search her entire SUV, at which
time officers located a plastic mug on the driver’s side front floorboard and
noticed the floor mats and center console were soaked with liquid.  Upon further questioning by officers, Cook
eventually identified the liquid as alcohol.

          At trial, the Reverend Stephen Martone,
an eyewitness to the accident, recalled what he saw immediately before the
accident.  Martone testified that he saw
Cook’s vehicle traveling north on Meadow Park. 
Martone observed a white compact car turn south onto Meadow Park from
Whitney Drive, at which time he saw Cook swerve off the road.  The written statement Martone provided police
immediately after the accident stated that Cook “swerved to miss” the other
vehicle; but when later asked by the court, Martone clarified that the white
car turned into its own lane and that he did not believe that Cook needed to
take any evasive action in order to avoid the other vehicle.

          James A. Moore, an accident
reconstruction investigator, also testified at trial about a report he
prepared.  Moore observed that there were
no line-of-sight issues that would prevent a driver traveling north on Meadow
Park from noticing the approaching curve in the road.  Based upon his measurements of the roadways,
observations at the accident scene, and damage done to the vehicles involved,
Moore calculated that Cook was traveling at approximately thirty-five to
thirty-nine miles per hour when her vehicle left the roadway and entered
Ochoa’s lawn.  The posted speed limit in
the residential neighborhood is thirty miles per hour.  After striking Ochoa, Cook then continued to
travel in a northerly direction for approximately 139 feet until she collided
with the parked SUV.  Ochoa was carried
and thrown approximately 86 feet from the initial point of impact in his yard
to his final resting place in the lawn across the street.  Moore also noted that there were no signs of
braking either in the roadway, as would be indicated by tire skid marks, or in
the lawn, as would be indicated by uprooted grass.  Moore calculated that had there been another
car turning from the intersection of Meadow Park and Whitney, Cook would have
been able to slide to a stop after appropriately applying the brakes before
contacting the other vehicle.  But Moore
did indicate that Cook had insufficient time and distance to react to the
presence of Ochoa, considering the speed at which she was traveling.

          Cook testified that she drank at least
two large beers at a restaurant earlier that evening, consumed another at home,
then poured another into a cup to take with her in her vehicle to pick up her
granddaughter.  As she was approaching
the curve on Meadow Park Drive in front of Ochoa’s residence, she averted her
eyes from the road to adjust her CD player. 
When she looked back up, she saw what she initially believed to be a
large black truck, but now thinks was a white car, coming directly at her.  Cook thought she might have been confused
about the type of vehicle based on either her recollection of the front grill
of the vehicle being black or the fact that her path ultimately ended when she
collided with a parked black SUV.  According
to Cook, she jerked her SUV to the right, entering Ochoa’s lawn.  Cook never saw Ochoa before running him
over.  Cook even indicated that Ochoa
placed one of his hands on the hood of her vehicle.

          Cook was arrested on suspicion of
driving while intoxicated.  Her blood
alcohol concentration registered at .20, more than twice the legal limit of .08,
three hours after the accident occurred. 
Cook admitted to drinking that evening, but she insisted that the accident
only occurred because she had to maneuver to avoid hitting an oncoming
car.  At trial, Cook admitted that she
believed her intoxication was at least a cause of the death of Ochoa.

          The trial court found that Cook used
her vehicle as a deadly weapon when she committed the offense of intoxication
manslaughter.  The trial court also found
true an enhancement count that Cook had a prior felony conviction, and the
court sentenced Cook to twenty years’ imprisonment.  This appeal followed.

III.  Evidentiary Sufficiency

          In
two points, Cook complains that the evidence is both legally and factually
insufficient to support the affirmative finding that she used her motor vehicle
as a deadly weapon when she drove into and killed Ochoa.  Cook argues she was attempting to avoid an
oncoming vehicle and only swerved into Ochoa’s yard in an evasive maneuver to
avoid an alternate collision.  The State
contends that the evidence supports that Cook, while intoxicated, drove her SUV
in a reckless and dangerous manner, thus causing her to veer off the road and cause
the death of Ochoa.  We agree with the State.

          A.      Law on Intoxication Manslaughter and
Deadly Weapon

          A person commits the offense of
intoxication manslaughter if the person (1) operates a motor vehicle in a
public place, (2) is intoxicated, and (3) by reason of that
intoxication, causes the death of another by accident or mistake.  See Tex. Penal
Code Ann. § 49.08(a)(1), (2) (Vernon Supp. 2010).  Pursuant to statute, intoxication manslaughter
is a strict liability offense; thus, no culpable mental state is necessary to
convict a defendant of intoxication manslaughter.  See Strickland v. State, 193 S.W.3d 662, 666
n.3 (Tex. App.—Fort Worth 2006, pet. ref’d); see also Torres v. State, 52 S.W.3d 285, 286 (Tex. App.—Corpus
Christi 2001, no pet.) (explaining that “notwithstanding section 6.02(b), proof
of culpable mental state not required for conviction of offense under chapter
49”) (citing Tex. Penal Code Ann. §§ 49.08(a), 49.11 (Vernon Supp. 2001)).

A
deadly weapon is:  “(A) a firearm or anything manifestly
designed, made, or adapted for the purpose of inflicting death or serious
bodily injury; or (B) anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury.”  Tex. Penal Code Ann. § 1.07(a)(17)
(Vernon Supp. 2010).  To determine
whether the evidence supports a deadly weapon finding in cases involving motor
vehicles, we conduct a two-part analysis. 
Hilburn v. State, 312 S.W.3d 169,
177 (Tex. App.—Fort Worth 2010, no pet.) (citing Sierra v.
State, 280 S.W.3d 250, 255
(Tex. Crim. App. 2009)).  We first
“evaluate the manner in which the defendant used the motor vehicle during the
felony.”  Sierra, 280 S.W.3d at 255.  We then “consider whether, during the felony,
the motor vehicle was capable of causing death or serious bodily injury.”  Id.  An affirmative deadly weapon finding in a
prosecution for intoxication manslaughter has a negative impact on a
defendant's eligibility for community supervision, parole, and mandatory
supervision.  Id. at 254 (citing Tex. Code Crim. Proc. art. 42.12 § 3g(a)(2)
(Vernon 2006); Tex. Gov’t Code Ann. §§ 508.145 (Vernon Supp. 2007),
508.149, 508.151 (Vernon 2004); Tex. Penal Code Ann. § 1.07(a)(17)(B)
(Vernon 2003)).

In examining the manner in which the defendant
operated the vehicle, we evaluate whether the driving was reckless or
dangerous.  Sierra, 280 S.W.3d at
255.  We consider several factors
in examining whether a defendant’s driving was reckless or dangerous:  (1) intoxication,
Tyra v. State, 897 S.W.2d 796, 798–99  (Tex. Crim. App. 1995); (2) speeding, Drichas
v. State, 175 S.W.3d 795, 797 (Tex. Crim. App. 2005); (3) disregarding
traffic signs and signals, id. at 798; (4) driving erratically, id.;
Mann v. State, 13 S.W.3d 89, 91–92 (Tex. App.—Austin 2000), aff'd, 58 S.W.3d 132 (Tex.
Crim. App. 2001); and (5) failure to control the vehicle, Sierra,
280 S.W.3d at 255–56.

B.      Legal
Sufficiency

                   1.       Legal Sufficiency
Standard of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).  This standard
gives full play to the responsibility of the trier of fact to resolve conflicts
in the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at
778.  The trier of fact is the sole judge
of the weight and credibility of the evidence. 
See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown
v. State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied,
129 S. Ct. 2075 (2009).  Thus, when
performing a legal sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the
factfinder.  Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we “determine whether
the necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.”  Hooper v. State, 214
S.W.3d 9, 16–17 (Tex. Crim. App. 2007). 
We must presume that the factfinder resolved any conflicting inferences
in favor of the prosecution and defer to that resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Clayton, 235 S.W.3d at 778.

                    2.       The
Evidence is Legally Sufficient

The
record contains legally sufficient evidence supporting the trial court’s
finding that Cook was driving in a dangerous and reckless manner while
intoxicated and that she caused Ochoa’s death. 
The evidence shows that Cook’s blood alcohol concentration was more than
two times the legal limit over three hours after the accident occurred; that Cook
was driving with an open container of beer in her vehicle; that the road Cook
was traveling on had a slight curve at the bottom of a downhill slope; that Cook
was speeding as she was traveling on the road; that Cook was not maintaining a
proper lookout when approaching this curve because she was distracted by her CD
player; and that neither prior to, nor after, veering off the road and running into
Ochoa did Cook ever apply her brakes.  Cook’s
SUV only came to a rest after striking another vehicle legally parked in a
driveway across the street from where Cook initially struck Ochoa.

          Cook’s
SUV was capable of, and did, in fact, cause Ochoa’s death.  Cook collided with Ochoa, knocking him onto the
hood of her SUV; then proceeded to carry him another 86 feet across his yard, the
intersecting street, and into his neighbor’s lawn where he finally came to a
rest.  Moore, the accident reconstruction
investigator, testified that after doing a comparison between Cook’s Nissan
Pathfinder and a 44-caliber handgun, there was more than ten times the kinetic
energy generated by Cook’s SUV than the handgun; thus, making the vehicle a
deadly weapon.  And the Tarrant County
Medical Examiner’s autopsy report indicated that Ochoa died from multiple blunt
trauma after being struck by a motor vehicle.

          Viewing the evidence in the light most
favorable to the prosecution, a rational factfinder could have determined
beyond a reasonable doubt that Cook used her vehicle in a manner capable of
causing death or serious bodily injury.  See Tex. Penal Code Ann. §1.07(a)(17);
Sierra, 280 S.W.3d at 256 (holding
evidence of deadly weapon legally sufficient when defendant exceeded speed
limit, failed to maintain control of his SUV, and in fact caused serious bodily
injury to another).  We hold that the
evidence was legally sufficient to support the trial court’s deadly weapon finding,
and we overrule Cook’s first point.

C.      Factual
Sufficiency

                   1.       Factual Sufficiency Standard of Review

When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Steadman v. State, 280 S.W.3d 242, 246
(Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder’s determination is clearly wrong and
manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder’s determination is
manifestly unjust.  Steadman, 280
S.W.3d at 246; Watson, 204 S.W.3d at 414–15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, although legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.  Unless we conclude that it is
necessary to correct manifest injustice, we must give due deference to the
factfinder’s determinations, “particularly those determinations concerning the
weight and credibility of the evidence.” 
Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); see
Steadman, 280 S.W.3d at 246. 
Evidence is always factually sufficient when it preponderates in favor
of the conviction.  Steadman, 280
S.W.3d at 247; see Watson, 204 S.W.3d at 417.  Both legal and factual sufficiency are
measured by the elements of the crime as defined by the hypothetically correct
jury charge.  Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

                    2.       The
Evidence is Factually Sufficient

          In addition to the evidence discussed
above, Cook testified to her version of what transpired and stated that another
vehicle turned out directly into her lane and that thus it was inevitable that
a collision would occur, either with that vehicle or with something else should
she choose to swerve and avoid it.  Cook
contends that “she made a split-second decision to avoid an oncoming car [when]
she was faced with hitting an oncoming car, or swerving an[d] perhaps colliding
with something else,” which unfortunately in this case was Ochoa.

Cook
initially testified that she was attempting to avoid a large, black truck after
it allegedly turned into her lane.  But
other witnesses at the scene testified that the other car was actually a small,
white compact car.  Cook herself even
seemed unsure as to whether the other vehicle was a car or truck.  Additionally, while one witness indicated in
his initial statement written at the scene of the accident that Cook’s SUV
“swerved to miss” another car, the same witness later testified at trial that
he did not believe Cook needed to take any evasive action to avoid the other
vehicle because the other vehicle did not turn into Cook’s lane of traffic.  But even if the witnesses’
testimony was inconsistent, the trial judge was free to believe their trial
testimony over the statements they made to the police.  See Chambers v. State, 805 S.W.2d 459,
461 (Tex. Crim. App. 1991); Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986); Baker v. State, No. 14-08-00047-CR, 2009 WL 838257, at
*3 (Tex. App.—Houston [14th Dist.] Mar. 31, 2009, pet. dism’d as untimely filed)
(mem. op., not designated for publication); see also Fuentes v. State,
991 S.W.2d 267, 271 (Tex. Crim. App.), cert. denied, 528 U.S. 1026
(1999) (noting that inconsistency goes to the credibility of the witnesses and
the jury or the trial court judge as factfinder is the sole judge of that
issue).

          Furthermore, the accident
reconstruction investigator indicated that Cook took no evasive action after
hitting Ochoa and did not brake at any point between leaving the roadway and
eventually colliding with the parked vehicle in the driveway across the street.
 Based on the speed at which Cook
was traveling and the measurements taken by Moore, had there been another
vehicle turning from the intersection of Meadow Park and Whitney, Cook would
have had sufficient time to perceive, react, and stop prior to colliding with
that vehicle, or alternatively, to reduce her rate of speed before exiting the
roadway.

          The evidence here was factually
sufficient to support the affirmative finding that the motor vehicle was used
in a deadly manner.  Viewing the evidence
in a neutral light, we conclude that a rational trier of fact could have found
beyond a reasonable doubt that Cook used her vehicle in a manner capable of
causing death or serious bodily injury.  Sierra, 280 S.W.3d at 256.  The evidence is not so weak that the trial
judge’s determination was clearly wrong or manifestly unjust.  Additionally, the conflicting evidence does
not so greatly outweigh the evidence supporting the conviction that the trial
judge’s determination is manifestly unjust.  Lancon
v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414–15, 417. 
We hold that the evidence is factually sufficient to support the trial
court’s deadly weapon finding, and we overrule Cook’s second point.

 

 

IV.  Conclusion

          Having overruled both of Cook’s
points, we affirm the trial court’s judgment.

 

 

 

                                                                   BILL
MEIER

                                                                   JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

 

PUBLISH

 

DELIVERED:  September 9, 2010