

NUMBER 13-12-00118-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

BENJAMIN IBARRA,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

On appeal from the 24th District Court
of Victoria County, Texas.

# MEMORANDUM OPINION

Before Justices Garza, Benavides and Perkes
Memorandum Opinion by Justice Garza

A jury found appellant, Benjamin Ibarra, guilty of two counts of aggravated assault, *see* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011), and one count of endangering a child, *see id.* § 22.041(c), (f), arising out of a vehicular collision on March

14, 2011 (counts one, two, and three), and one count of aggravated assault and one count of endangering a child arising out of a vehicular collision on March 28, 2011 (counts four and five), *see id.* §§ 22.02(a)(2), 22.041(c), (f). The jury found that a deadly weapon, a motor vehicle, was used in each count. *See id.* §§ 22.02(a)(2); 12.35(c)(1) (West Supp. 2011) (elevating state jail felony to third-degree felony if deadly weapon used or exhibited during commission of offense). The jury assessed punishment at eight years' imprisonment and a $1,000 fine in counts one, two, and four, and ten years' imprisonment and a $1,000 fine in counts three and five, with the sentences in counts three and five suspended and appellant placed on community supervision for ten years. The sentences were ordered to run concurrently. Appellant contends that: (1) the trial court erred in permitting a State witness to testify as an expert witness; and (2) the evidence is insufficient that he used or exhibited a deadly weapon in any of the charged counts. We affirm.

## I. BACKGROUND

We have summarized the following relevant testimony.

### A. Monica Peña

Monica Peña testified that on March 14, 2011, she was driving along Port Lavaca Highway in Victoria, Texas. Monica's passengers included her cousin, Sandra Arenivas, and Monica's two-and-a-half-year-old daughter, Delisa, who was riding in a car seat in the back seat. Monica saw appellant, a former boyfriend, drive up behind her in his father's truck. Monica was driving about forty miles per hour when appellant pulled up and rammed her vehicle from behind. Appellant then passed her on the left, pulled in front of her, reversed, and rammed the front of her vehicle. Monica's vehicle

started spewing water and smoke and was damaged to the extent that she could not drive it home. She managed to drive to her father's house, called the police, and reported the incident.

### B. Sandra Arenivas

Sandra testified that she was riding in the front passenger seat of Monica's vehicle when the vehicle was struck from the rear. She saw appellant's maroon truck passing Monica's vehicle. Appellant sped up, pulled in front of Monica's vehicle, reversed, and rammed Monica's vehicle from the front. Appellant drove off after the collision. Sandra testified she was "scared" because they could have been hurt. Sandra experienced back pain from the collision, but did not seek treatment because she did not have health insurance.

### C. Daniel Torres

Daniel Torres, a senior patrol officer with the Victoria Police Department, testified that on March 14, 2011, he responded to a call regarding the vehicular assault. According to Officer Torres, Monica was crying and upset and Sandra was distraught. Monica reported that appellant had rammed her vehicle with his truck. Monica told Officer Torres that the truck appellant was driving belonged to one of his family members who lived nearby. After Monica described the truck and gave the address of the family member, Officer Torres located the truck parked at a nearby residence. There was a rag on the truck's bumper, which was partially clean and partially dirty; the paint on the letters and numbers on the license plate was smeared. The hood of the truck was warm, suggesting that it had recently been driven. Officer Torres took several photographs of the truck. Officer Torres testified that the damage to the truck's license

plate was consistent with paint transfer on Monica's vehicle. Officer Torres testified that based on his experience, a person can experience serious bodily injury or death as a result of driving a vehicle that is rammed from the front or rear by a vehicle traveling at thirty-five to forty miles per hour. According to Officer Torres, Sandra was holding her back and complaining of back pain.

On cross-examination, Officer Torres said he contacted appellant's cousin, who said that the truck did not have a battery and had not been driven in a couple of weeks. Officer Torres did not believe appellant's cousin. Officer Torres noticed fresh fingerprints on the truck's hood consistent with someone closing the truck's hood.

### D.  Jeff Hobbs

Jeff Hobbs, a detective with the Victoria Police Department, testified that he was assigned to investigate the March 14, 2011 aggravated assault. Officer Hobbs inspected the maroon truck on April 11, 2011. He noticed that the truck's license plates were scratched. According to Officer Hobbs, the scratches on the truck were consistent with markings on Monica's vehicle. Officer Hobbs testified that serious bodily injury or death could occur to occupants of a vehicle that was rammed from the front or rear by another vehicle at forty miles per hour. While investigating this case, Officer Hobbs learned that appellant was also accused of similar conduct—using his vehicle to harm someone—involving a different victim.

### E.  Nicholas Garcia

Garcia testified that he was an eighteen-year-old high school senior at the time of trial. Garcia stated that he and his little brother, Teodoro Candia ("Teo"), drove to a convenience store on March 28, 2011. Although Garcia does not have a driver's

4

license, his mother gave him permission to drive the family's Suburban to the nearby store. After Garcia and Teo left the convenience store, Garcia saw appellant standing in the middle of the street; Garcia had to swerve to avoid hitting him. Garcia said he avoids appellant because they have had problems in the past. A short while later, stopped at a red light, Garcia noticed appellant in his truck. Appellant sped up, ran a red light, and rammed into Garcia's Suburban from the rear. Garcia was driving about thirty miles per hour when appellant's truck rammed the Suburban from the rear a second time; the second impact was even harder than the first. Garcia sped up to get away because he was afraid Teo would get hurt. Appellant then passed Garcia's Suburban on the right, cut in front, and slammed on his brakes. Garcia tried to swerve or stop, but could not avoid hitting appellant's truck. Appellant did not stop; Garcia drove home and called the police to report the incident.

### F. Teodoro Candia

Teo, Garcia's fifteen-year-old brother, gave very similar testimony regarding the events of March 28, 2011. After Garcia and Teo left the convenience store in the Suburban, Teo saw appellant standing in the road. Appellant threw up his hands in a threatening manner, and Garcia swerved to avoid hitting him. Appellant then followed them in his truck and struck the Suburban from the rear a couple of times. Teo stated that the impact hurt his neck a little. Appellant pulled his truck in front and slammed on the brakes, causing the Suburban to rear-end the truck. Teo testified that during the incident, he was scared of getting hurt.

### G. Jerry Sepulveda

Sepulveda, an officer with the Victoria Police Department, testified that he

5

investigated the March 28, 2011 incident. Officer Sepulveda spoke to Garcia and Teo and took pictures of the Suburban the night of the incident. Officer Sepulveda observed maroon transfer paint (the color of appellant's truck) on the front of the Suburban, which had been damaged. Officer Sepulveda testified that a vehicle ramming another vehicle from the rear is likely to cause serious bodily injury or death. He also stated that a vehicle that pulls in front of another vehicle and causes a rear-end collision by slamming on its brakes can cause serious bodily injury or death.

## H. John Swenson

Swenson, an officer with the Victoria Police Department, testified that he took several photographs of damage and transfer paint on appellant's truck. While he was taking the photographs, appellant and another male approached him. Appellant was verbally aggressive, and Officer Swenson was concerned for his safety.

## I. Clay Fetters

Fetters, a detective with the Victoria Police Department, took statements from Garcia and Teo regarding the March 28, 2011 incident. Officer Fetters observed front and rear-end damage to Garcia's Suburban and saw that it had maroon paint markings consistent with the color of appellant's truck.

## J. Fabian Treviño

The State presented the testimony of Fabian Treviño as an expert witness. Appellant's counsel objected, and the trial court held a hearing outside the presence of the jury to determine if Treviño would be allowed to testify as an expert witness. At the conclusion of the hearing, the trial court overruled appellant's objection and permitted Treviño to testify.

Treviño testified that he has worked in the automotive business and has held certifications in the field for seventeen years. Treviño has been doing estimating work on vehicles for thirteen years, and prior to his present position, worked at a Ford dealership for fifteen years.

Treviño examined Monica's Pontiac and Garcia's Suburban involved in this case and prepared body shop estimates on both vehicles. Treviño testified that the damage to the license plate on appellant's truck was consistent with transfer paint on the rear bumper of the Pontiac, and damage to the Pontiac's rear bumper was consistent with being struck by appellant's truck. Treviño also testified that the damage to the Suburban was consistent with the damage to appellant's truck.

The State rested, and the defense presented the following witnesses.

### K. Manuel Ibarra

Manuel Ibarra testified that he is appellant's father. He testified that he has owned the Ford truck for about a year. He stated that the truck "cut[s] off" if driven at speeds in excess of twenty or thirty miles per hour. According to Ibarra, he was not home when the police came to photograph his truck, but the truck was not operable because it did not have a battery.

On cross-examination by the State, Ibarra said that his truck was once struck by an unknown vehicle while parked at his house.

### L. Appellant

Appellant testified that he and Monica were together for about a year, but he ended the relationship. Appellant knew Sandra because he and Monica sometimes gave her a ride. Appellant said he did not know Garcia or Teo. Appellant stated that

7

the damage to the rear of Monica's Pontiac occurred one day when she backed into the maroon truck while it was parked. Appellant denied that he had ever driven the truck and denied that he struck Monica's Pontiac or Garcia's Suburban with the truck.

## II. EXPERT WITNESS TESTIMONY

By his first issue, appellant contends the trial court abused its discretion in allowing Trevino to testify as an expert witness regarding the cause of damage to the vehicles involved in this case. Appellant argues that: (1) Trevino was not qualified to give an opinion on damage causation and (2) his conclusions were not based on any scientific principles. The State responds that: (1) Trevino was sufficiently experienced and qualified to serve as an expert witness concerning causation of damage to the vehicles; and (2) any error in admitting Trevino's testimony was harmless because the State presented overwhelming evidence of appellant's guilt.

### A. Standard of Review and Applicable Law

"Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Rodgers v. State,* 205 S.W.3d 525, 527–28 (Tex. Crim. App. 2006). "For this reason, appellate courts rarely disturb the trial court's determination that a specific witness is or is not qualified to testify as an expert." *Id.* at 528.

In explaining the requirements for admissibility of expert testimony, the Texas Court of Criminal Appeals has stated:

> The Texas Rules of Evidence set out three separate conditions regarding admissibility of expert testimony. First, Rule 104(a) requires that "[p]reliminary questions concerning the qualification of a person to be a witness . . . be determined by the court . . . ." Second, Rule 702 states: "If

8

scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." And third, Rules 401 and 402 render testimony admissible only if it "tend[s] to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*Vela v. State*, 209 S.W.3d 128, 130–31 (Tex. Crim. App. 2006) (internal citations omitted). These requirements compel a trial judge to make three separate inquiries— (1) whether the witness is qualified; (2) whether the testimony is reliable; and (3) whether the testimony is relevant. *Id.* at 131.

In *Rodgers*, the court of criminal appeals noted that an appellate court should consider three criteria when determining whether a trial court abused its discretion in evaluating a witness's qualifications as an expert: (1) "is the field of expertise complex?"; (2) "how conclusive is the expert's opinion?"; and (3) "how central is the area of expertise to the resolution of the lawsuit?" *Id.* (quoting *Rodgers,* 205 S.W.3d at 528). "If the expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience." *Rodgers*, 205 S.W.3d at 528.

"[Q]ualification is a two-step inquiry." *Vela*, 209 S.W.3d at 131. "A witness must first have a sufficient background in a particular field, but a trial judge must then determine whether that background 'goes to the very matter on which [the witness] is to give an opinion.'" *Id.*

## B. Discussion

Here, the evidence adduced at the hearing established that Trevino had seventeen years of experience in the automotive industry and thirteen years of

experience as an estimator for damaged vehicles. He holds certifications as an estimator. In performing damage estimates for vehicles, Trevino is frequently required to determine whether damage to a vehicle is consistent with the owner's description of how the damage occurred. Thus, Trevino's expertise "fits" with the subject matter at issue: whether the damages to Monica's Pontiac and Garcia's Suburban were consistent with their accounts of how the damage occurred. *See Vela*, 209 S.W.3d at 133 ("The focus, then, is on the 'fit' between the subject matter at issue and the expert's familiarity therewith."). Trevino testified that license paint transfer and damage to both vehicles were consistent with the damage to appellant's truck. Trevino's testimony did not involve a complex subject, but rather consisted of "matching up" paint transfer and damages to the Pontiac and Suburban with damages to appellant's truck. *See Rodgers*, 205 S.W.3d at 528 (noting witness's qualifications are less important if expert evidence is close to the jury's common understanding). The State introduced photographs of the damage to the vehicles, and the jury could make its own comparisons.[1] We conclude that the trial court did not abuse its discretion in permitting Trevino to testify as an expert witness. We overrule appellant's first issue.

### III. DEADLY-WEAPON FINDING

By his second and third issues, appellant contends the evidence was insufficient to establish that he used or exhibited a deadly weapon in committing the aggravated assault offenses (issue two) and in committing the endangering a child offenses (issue three).

### A. Standard of Review and Applicable Law

---

[1] The black-and-white photographs in the record before us are of poor quality. We presume that the original photographs were of a higher quality.

The *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Brooks*, 323 S.W.3d at 898–99 (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt"). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

In reviewing the legal sufficiency of the evidence, we look at events occurring before, during, and after the commission of the offense, and we may rely on actions of the appellant that show an understanding and common design to do the prohibited act. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Each fact need not point directly and independently to the appellant's guilt, so long as the cumulative effect of all the incriminating facts are sufficient to support the conviction. *Id.*

11

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240).

To determine whether the evidence supports a deadly-weapon finding in cases involving motor vehicles, we conduct a two-part analysis. *Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.—Corpus Christi 2010, pet. ref'd); *Hilburn v. State*, 312 S.W.3d 169, 177 (Tex. App.—Fort Worth 2010, no pet.) (citing *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009)). We first "evaluate the manner in which the defendant used the motor vehicle during the felony" by determining whether the defendant's driving was reckless or dangerous. *Sierra*, 280 S.W.3d at 255; *Foley*, 327 S.W.3d at 916. We then consider "whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Sierra*, 280 S.W.3d at 255; *Foley*, 327 S.W.3d at 916 (citing *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003); *Drichas v. State*, 219 S.W.3d 471, 476 (Tex. App.—Texarkana 2007, pet. ref'd); *Williams v. State*, 946 S.W.2d 432, 435 (Tex. App.—Fort Worth 1997, pet. dism'd)).

## B.    Discussion

Appellant argues that there was no evidence he was intoxicated or speeding, or that he disregarded traffic signs and signals or failed to control his vehicle. *See Sierra*,

12

280 S.W.3d at 255–56 (noting that factors to consider in making reckless-or-dangerous determination include: (1) intoxication; (2) speeding; (3) disregarding traffic signs and signals; (4) driving erratically; and (5) failure to control the vehicle). He also asserts that there is no evidence that his driving placed Monica or Garcia in any actual danger. Appellant points to Garcia's description of the rear-end impact as a "bump" and the fact that there was no extensive body damage to either Monica's Pontiac or Garcia's Suburban.

With regard to the first part of the *Sierra* test—whether appellant's driving was reckless or dangerous—we reject appellant's argument that he was not driving recklessly or dangerously because he was not intoxicated or speeding. We conclude that by intentionally ramming another vehicle, appellant was driving in a manner that was reckless or dangerous. *See Sierra*, 280 S.W.3d at 255.

Officers Torres, Hobbs, and Sepulveda each testified that the acts alleged by appellant—intentionally ramming another vehicle from behind and pulling in front of a vehicle and reversing to intentionally strike the vehicle behind—could subject the occupants of the targeted vehicle to serious bodily injury or death. Appellant argues that the officers' testimony is "unreliable because it was not sufficiently tied to the facts of this particular case." We disagree. Officers Torres and Hobbs investigated the aggravated assault involving Monica's vehicle. Officer Sepulveda investigated the aggravated assault involving Garcia's vehicle. Each officer's testimony was therefore tied to the facts of the particular incident as described by the complainants. Moreover, appellant did not object to any of the officers' testimony on reliability grounds or any other grounds, and has therefore waived any complaint regarding admissibility of the

13

testimony.  *See* TEX. R. APP. P. 33.1.  Viewing the evidence in the light most favorable to the verdict, we conclude that:  (1) a rational trier of fact could have found beyond a reasonable doubt that appellant used or exhibited his truck as a deadly weapon while committing aggravated assault and endangering a child; and (2) the manner in which he used his truck when committing aggravated assault and endangering a child was capable of causing death or serious bodily injury.  *See Sierra*, 280 S.W.3d at 255.  We overrule appellant's second and third issues.

## IV. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
10th day of January, 2013.

14