

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0018-08

**ANTONIO SIERRA, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTEENTH COURT OF APPEALS
## HARRIS COUNTY

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, JOHNSON, HERVEY, and COCHRAN JJ., joined. MEYERS, J., filed a dissenting opinion in which HOLCOMB, J., joined.

## O P I N I O N

The court of appeals held that the evidence was legally insufficient to support the jury's finding that Antonio Sierra used or exhibited his vehicle as a deadly weapon while driving intoxicated.[1] We disagree. A rational jury could have found that Sierra drove in a reckless and dangerous manner during the offense. We therefore reverse and remand this

---

[1] *Sierra v. State*, No. 14-06-00528-CR, 2007 Tex. App. LEXIS 6724 (Tex. App.—Houston [14th Dist.] Aug. 23, 2007).

case to the court of appeals.

## Background

At approximately 4:30 p.m. on August 20, 2005, Laura Pacheco and her boyfriend, Hector Salinas Almendarez, were leaving an apartment complex in Houston. As they drove out of the complex onto Imperial Valley Drive in a small Toyota four-door car, Sierra T-boned the car with his Ford SUV. Imperial Valley Drive is a four-lane, heavily used road that is separated by a median made of concrete and grass. The entrance and exit of the apartment complex are located after a slight curve on Imperial Valley Drive and are adorned with bushes and a wrought iron fence on each side. Sierra's SUV hit the driver's side of the car, pushing part of it onto the median. When the SUV stopped, it remained pressed against the driver's side of the car.

After the accident, Sierra got out of his truck and began to scream at Pacheco and Almendarez, blaming them for causing the accident. Almendarez, who was in the passenger's seat of the car, looked over at Pacheco in the driver's seat. He noticed that she was bleeding and not moving or talking. Almendarez yelled at Sierra to call for help and then passed out. Officer T. Triplett with the Houston Police Department arrived at the scene of the accident a few minutes later and called for an ambulance. Officer Triplett identified Sierra as the driver of the SVU and smelled a "[s]trong odor of alcohol on his breath." By the time that Officer Triplett arrived, Almendarez regained consciousness, but Pacheco was still pinned in the car; she was having difficulty breathing and was convulsing. A tow truck

pulled Sierra's SUV from the car, and emergency personnel removed Pacheco from the car and took her to the hospital. She remained in the hospital for a month.

At trial, Almendarez recalled what he saw immediately before the accident. He testified that Pacheco fully stopped the car and waited for the oncoming traffic to pass before pulling onto Imperial Valley Drive. Almendarez saw Sierra's SUV traveling south in the outer lane. He also noticed another car, which was in front of Sierra's SUV, make a right turn into the apartment complex. At this point, Almendarez lost sight of Sierra's SUV because the car entering the complex blocked his view. Almendarez then saw Sierra's SUV, traveling south in the inner lane, right before the crash. Almendarez testified that Sierra changed lanes because the car in front of him was turning into the complex. He also stated that the bush at the north side of the entrance to the complex did not block his view of the traffic heading south.

After Pacheco was taken to the hospital, Officer Douglas Wayne Ertons with the Houston Police Department's accident division arrived at the scene to collect information. Officer Ertons initially observed that: the road was dry, there were no skid marks leading up to the point of impact, there was a gouge in the road near the entrance and exit of the apartment complex, and there were sideways skid marks leading up to where the car was resting on the median. Officer Ertons testified that the gouge in the road showed the point of impact and that the sideways motion of the car's tires created the skid marks leading to the median. Officer Ertons testified to three possibilities for the lack of any skid marks before

the point of impact: first, that Sierra did not brake; second, that Sierra did not apply the brake hard enough; or third, that the SUV had antilock brakes and Sierra "applied the brakes but they would not skid . . . ." At the scene, Officer Ertons spoke to Sierra and asked him to identify where he was on Imperial Valley Drive when he first saw the car. Based on Sierra's account, at trial, Officer Ertons stated that an average, undistracted person reacting to the car's presence under these conditions and traveling at the posted speed limit of thirty-five miles per hour would be able to come to a complete stop within seventy-one feet of the car. On cross-examination, Officer Ertons conceded that he was uncertain whether Sierra's account of his location at the time he first saw the car was entirely accurate. Officer Ertons explained that he did not know whether the Spanish-speaking translator specifically asked Sierra if he was near, past, or right at the location identified by Sierra.

Officer Ertons also calculated the speed of Sierra's SUV at twenty-eight miles per hour. Qualifying his calculation at trial, Officer Ertons testified that it was inaccurate because he could not account for the energy or momentum loss from the car striking the median and then resting on top of the median. Officer Ertons estimated that Sierra was traveling at a speed between highway and public roadway speeds. When Officer Ertons spoke to Sierra he "detected an odor" of alcohol, and when he asked Sierra whether he had been drinking or taking any drugs or narcotics, Sierra told him that he did not use any drugs or drink any alcohol that day. Finally, Officer Ertons testified that both the bush on the north side and a car making a right turn into the complex could obstruct the view of a driver turning north out

of the complex.

Sierra was arrested for driving while intoxicated (DWI). He failed several field sobriety tests, and his blood and breath samples revealed that his alcohol concentration, which registered at approximately .12, exceeded the legal limit of .08.[2] During the field sobriety tests, performed shortly after 7:00 p.m., Sierra told the administrating officer that he had thirteen beers the previous night while watching the Astros game. He was also adamant that the accident was not his fault and said that he was going ten miles per hour under the speed limit.

In April 2006, Sierra was charged with felony DWI. A jury found him guilty and found that he used his SUV as a deadly weapon during the commission of the offense. The jury then sentenced Sierra to ten years' imprisonment.

### Court of Appeals

On appeal, Sierra claimed, among other things, that the evidence was legally insufficient to support the jury's affirmative deadly weapon finding.[3] In doing so, Sierra maintained that the accident was not his fault.[4] Toward that end, he argued that: "(1) he had the right of way; (2) he was driving at a moderate rate of speed; (3) both drivers' vision was obscured by a fence and bushes; (4) prior to collision, [he] applied his brakes and turned to

---

[2] *See* TEX. PENAL CODE ANN. §§ 49.01(1)-(2) (Vernon 2003).

[3] *Sierra*, 2007 Tex. App. LEXIS 6724, at *1, *4.

[4] *Id.* at *4-5.

the left to avoid the collision; and (5) there is no evidence that his intoxication caused or contributed to the accident."[5]  The court of appeals agreed with Sierra and held that there is no evidence that Sierra "was driving in a reckless, threatening, careless, or dangerous manner, that he had violated any traffic laws, or that he was otherwise at fault for the collision."[6]  The court determined that the only evidence indicating the manner in which Sierra drove includes the following: "(1) his speed was below the 35 mile per hour speed limit; (2) there were no skid marks leading up to the accident; and (3) based on the location that [Sierra] said he first perceived the danger, [he] should have been able to stop before the collision occurred."[7]  Consequently, the court ordered the deadly weapon finding deleted from the trial court's judgment.[8]

### State's Petition for Discretionary Review

We granted the State's petition for discretionary review to decide whether the court of appeals applied the wrong legal standard and assumed incorrect facts in reversing and deleting the jury's affirmative deadly weapon finding.  The State argues that requiring a person to drive in a reckless, threatening, careless, or dangerous manner to sustain a deadly weapon finding is not the proper legal standard.  The State further argues that, even if this standard

---

[5]  *Id.*

[6]  *Id.* at *8-9.

[7]  *Id.* at *8.

[8]  *Id.* at *17.

is correct, the facts of this case meet the standard; therefore, upholding the deadly weapon finding in this case will not "open the floodgates to such findings in all felony DWI cases."[9] Nevertheless, the State contends that there is no rule of law preventing a deadly weapon finding in all felony DWI cases.

## Analysis

Section 49.04 of the Texas Penal Code prohibits a person from operating a motor vehicle in a public place while in a state of intoxication.[10] "Intoxicated" in Penal Code Section 49.01(2) is defined as either: "loss of faculties" or "per se" intoxication (i.e., .08 or more alcohol concentration).[11] "Deadly weapon," as defined in Penal Code Section 1.07(a)(17)(B), means "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."[12] An affirmative deadly weapon finding has a negative impact on a defendant's eligibility for community supervision, parole, and mandatory supervision.[13]

---

[9] State's Br. at 12.

[10] TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003); *State v. Barbernell*, 257 S.W.3d 248, 256 (Tex. Crim. App. 2008).

[11] *Barbernell*, 257 S.W.3d at 249.

[12] TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon 2003).

[13] *Mann v. State*, 58 S.W.3d 132, 133 (Tex. Crim. App. 2001); *see also* TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2) (Vernon 2006); TEX. GOV'T CODE ANN. § 508.145 (Vernon Supp. 2007), §§ 508.149, 508.151 (Vernon 2004).

Adopting the reasoning and holding of the Austin Court of Appeals in *Mann v. State*,[14] we held that Texas law authorizes a deadly weapon finding in felony DWI cases.[15] The Austin court rejected Mann's arguments that use of a deadly weapon without an associated felony will not support a deadly weapon finding and that such a finding is impermissible because DWI is a misdemeanor offense at its inception.[16] Relying on our decision in *Tyra v. State*, where we said that Tyra's vehicle was used as a deadly weapon when he accidentally or mistakenly caused the death of an individual when driving while intoxicated,[17] the court held that no associated offense is required under the phrase "used a deadly weapon."[18] The court also determined that prior convictions used to elevate a misdemeanor DWI to a felony are "elements of the offense under section 49.09(b);" thus, an affirmative deadly weapon finding is not unlawful because DWI is a misdemeanor at its inception.[19] Quoting from our decision in *Patterson v. State*,[20] the court noted that "[a]ll felonies are theoretically susceptible to an affirmative weapon finding for the purposes of denial of community supervision and

---

[14] 13 S.W.3d 89, 91-92 (Tex. App.—Austin 2000).

[15] *Mann v. State*, 58 S.W.3d 132, 132 (Tex. Crim. App. 2001).

[16] *Mann*, 13 S.W.3d at 91-92.

[17] 897 S.W.2d 796, 798-99 (Tex. Crim. App. 1995).

[18] *Mann*, 13 S.W.3d at 91.

[19] *Id.* at 92.

[20] 769 S.W.2d 938, 940 (Tex. Crim. App. 1989).

limitation of parole eligibility."[21]  Considering the specific issue before it, the court asked whether the evidence shows that Mann's vehicle "should be classified as a deadly weapon because it was capable of causing serious bodily injury or death in a manner of its use or intended use while [Mann] committed the felony DWI."[22]  In making this determination, the court stated that "evidence that others were endangered" is required; "a hypothetical potential for danger if others had been present" is not sufficient.[23]  The court then found that the evidence was sufficient because Mann "'almost hit another vehicle head-on'" when he crossed the center line and an experienced police officer testified that such a collision "was capable of causing death or serious bodily injury."[24]  The court also rejected Mann's claim that a person must have the specific intent to use an instrument as a deadly weapon based, in part, on our holding in *Walker v. State*[25] that "no intent to use the automobile as a deadly weapon need be shown."[26]

In this case, we must decide whether, in viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt

---

[21]  *Mann*, 13 S.W.3d at 92.

[22]  *Id.*

[23]  *Id.*

[24]  *Id.*

[25]  *Id.*

[26]  897 S.W.2d 812, 814 (Tex. Crim. App. 1995).

that Sierra used or exhibited his SUV as a deadly weapon when he was driving while intoxicated.[27]  Therefore, we must determine if the manner in which Sierra used his SUV when driving while intoxicated was capable of causing death or serious bodily injury.[28]  In making this determination in past cases involving a motor vehicle as a deadly weapon, we have divided this question into two parts: first, we evaluate the manner in which the defendant used the motor vehicle during the felony; and second, we consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury.[29]

Although we have never announced a specific standard for assessing a defendant's manner of driving, we have, in past decisions, examined whether a defendant's driving was reckless[30] or dangerous[31] during the commission of a felony.  For example, in *Tyra v. State*, we characterized Tyra's driving as reckless "enough to endanger the lives of other people" and said that Tyra was "too drunk to control the vehicle."[32]  And in *Mann*, as noted above, the

---

[27]  *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) (citing *Jackson v. Virgina*, 443 U.S. 307, 319 (1979); *Tisdale v. State*, 686 S.W.2d 110, 114 (Tex. Crim. App. 1985) (op. on reh'g)).

[28]  *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B).

[29]  *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (citing *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); (*Walker v. State*, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995)).

[30]  *Id.*; *Tyra*, 897 S.W.2d at 799; *see also* TEX. PENAL CODE ANN. § 6.03(c) (Vernon 2003).

[31]  *Cates*, 102 S.W.3d at 738-39.

[32]  897 S.W.2d at 798-99.

evidence showed that Mann "'almost hit another vehicle head-on when [his] vehicle crossed the center lane."[33] Next, in *Cates*, we reversed the court of appeals's holding that the evidence was legally sufficient to sustain the deadly weapon finding because there was no evidence that Cates drove the truck in a deadly or dangerous manner during the offense of failure to stop and render aid.[34] Finally, in *Drichas*, we observed that Drichas, in the course of evading detention with a vehicle, led law enforcement officers on a fifteen-mile high-speed chase during which he "disregarded traffic signs and signals, drove erratically, wove between lanes and within lanes, turned abruptly into a construction zone, . . . and drove down the wrong side on the highway."[35] Affirming the deadly weapon finding in that case, we said that Drichas's "manner of using his truck posed a danger to pursuing officers and other motorists that was more than simply hypothetical."[36]

In this case, when evaluating the manner in which Sierra was driving while intoxicated, the court of appeals determined that to affirm a deadly weapon finding, there must be evidence of: (1) reckless, threatening, careless, or dangerous driving; (2) a violation of any traffic law; and (3) fault for the collision. Our preceding discussion establishes that some of the criteria used by the court of appeals include factors that we have found determinative in

---

[33] 13 S.W.3d at 92.

[34] 102 S.W.3d at 738-39.

[35] 175 S.W.3d at 797.

[36] *Id*. at 798.

prior cases—dangerous and reckless driving and the violation of traffic laws.

The State urges us to look beyond a defendant's overt physical actions and rely instead on the single factor of intoxication, which, in the State's view, is "the most dangerous and reckless of them all."[37]  In support of its argument, the State cites the following statistic from the Mother's Against Drunk Driving website: "In 2006, an estimated 17,602 people died in alcohol-related traffic crashes—an average of one every 30 minutes."[38]  The court of appeals rejected this argument,[39] and Sierra argues that we should do the same.  But we do not need to settle that issue today.  Our precedent gives us adequate guidance here because, when reviewing the facts of this case, the court of appeals erred in concluding that Sierra's manner of driving while intoxicated was not reckless or dangerous.

Looking at the evidence in the light most favorable to the prosecution, a rational fact-finder was permitted to conclude that Sierra was driving recklessly or dangerously while intoxicated.[40]  There was no evidence that Sierra attempted to brake before the impact, even though he told Officer Ertons that he was 247 feet away from the car when he first spotted it.  Based on Sierra's account, the evidence showed that a normal, undistracted person, who was driving at the thirty-five mile-per-hour speed limit, would have stopped seventy-one feet

---

[37]  State's Br. at 11.

[38]  *Id.* (citing http://ww.madd.org/Drunk-Driving/Drunk-Driving/Statistics.aspx).

[39]  *Sierra*, 2007 Tex. App. LEXIS 6724, at *10 n.8; *see also Mann*, 58 S.W.3d at 133-34 (Johnson J., concurring, joined by Price and Cochran, JJ.).

[40]  *See Cates*, 102 S.W.3d at 739.

before the car. Therefore, Sierra could have avoided the collision, but he failed to do so, even though he had ample opportunity to stop before hitting the car. The evidence also established that Sierra was traveling at a speed between public roadway speeds, which a reasonable jury could infer meant thirty-five miles per hour from Officer Ertons's testimony, and highway speeds. Considering all of these facts, a jury could reasonably find that Sierra was speeding and failed to maintain control his SUV. Therefore, it was reasonable for the jury to conclude that Sierra's driving was dangerous and reckless while intoxicated.

Next, we turn to the second inquiry—whether Sierra's SUV was capable of causing serious bodily injury at the time of the accident. We find that a rational jury was permitted to answer in the affirmative. The record establishes that the SUV did indeed cause serious bodily injury to Pacheco. We hold that, viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's finding that Sierra's SUV was used or exhibited as a deadly weapon.

## Conclusion

Because the evidence is legally sufficient to support the jury's affirmative deadly weapon finding, we reverse the part of the court of appeals's judgment deleting the deadly weapon finding and reinstate it. Further, we remand this case so that the court can consider Sierra's remaining point of error—whether the evidence is factually sufficient to support the deadly weapon finding because the court of appeals reversed on legal sufficiency only.

DATE DELIVERED: April 1, 2009
PUBLISH