

# IN THE
## TENTH COURT OF APPEALS

### No. 10-11-00226-CR

**DONALD RAY NELSON,**

                                                              **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                              **Appellee**


### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 10-00453-CRF-272


## MEMORANDUM  OPINION


Raising two issues, Donald Ray Nelson appeals his robbery conviction.  In a special issue, the jury found that Nelson used or exhibited a deadly weapon.  The trial court found an enhancement paragraph true and assessed a thirty-five year prison sentence and $8,600 in restitution.

We begin with Nelson's second issue, which contends that the evidence is insufficient to support the jury's finding that Nelson used or exhibited a deadly weapon (a motor vehicle).  The Court of Criminal Appeals has expressed our standard of review

of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert. denied,* 132 S.Ct. 2712 (2012).

If the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

A trial court must enter a deadly weapon finding in the judgment if the trier of fact affirmatively finds that the defendant used or exhibited a deadly weapon during the commission of a felony offense or during immediate flight therefrom. TEX. CODE

CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2012); *see Polk v. State,* 693 S.W.2d 391, 394 (Tex. Crim. App. 1985). A "deadly weapon" is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2012). To be legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained; and (3) that other people were put in actual danger. *Drichas v. State,* 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). A motor vehicle can be a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. *Id.*; *see, e.g., Sierra v. State,* 280 S.W.3d 250, 255-56 (Tex. Crim. App. 2009).

The evidence shows that Nelson approached Shelly Gutierrez at a carwash in College Station while Gutierrez was cleaning trash out of her Suburban SUV. She said that Nelson said, "I'm going to take your car. If you say a word, I'll kill you." Gutierrez stepped back, and Nelson drove off in her Suburban. As he drove away, Gutierrez began screaming that her car had been taken. Guadalupe Romero, the carwash manager who knew Gutierrez, heard her screams and thought that Gutierrez's children were in her vehicle, so he jumped into his truck and took off after Gutierrez's Suburban. Romero said that he quickly caught up to Nelson, and pulling up next to him at a red light, motioned for Nelson to stop. Nelson made an obscene gesture and drove off when the light turned green.

Romero chased Nelson through College Station, describing the driving as

"crazy," including running a stop sign. When they made it to Highway 6, Nelson headed toward Hearne, and Romero continued following him and was able to call 9-1-1 to tell police what he was doing. Romero said that as he followed the Suburban to Hearne, which is twenty to thirty minutes from College Station, they were driving as fast as 80 mph. As they entered Hearne, Romero saw that the Suburban had crashed into another vehicle, and both vehicles were in the ditch. The driver of the Suburban got out and started running, and Romero got out of his truck and gave chase, as did a police officer who had joined the pursuit.

Andrew Turner, a Bellmead police officer, was driving in his personal car from Bryan to Bellmead on Highway 6, going around 75 or 80 mph, when he was passed by the Suburban, which he estimated was going around 115 mph. He had noticed the Suburban coming up behind him because it was going very fast in the turn lane and was illegally passing cars. Because the Suburban was going so fast and being driven recklessly, Officer Turner gave chase, going as fast as 115 mph, to try to get the license plate number. Officer Turner said that with the way the Suburban was being driven, it was capable of causing death or serious bodily injury.

As Officer Turner neared Hearne, he noticed on the side of the road a Hearne patrol unit that appeared to have just completed a traffic stop and to be trying to get into traffic to follow the Suburban. As Officer Turner rounded a curve, he saw that the Suburban and another car had wrecked and were in a culvert. He saw Nelson get out of the Suburban and start running, and he drove after Nelson, who gave up. Officer Turner got out with his duty weapon and ordered Nelson to the ground. A Hearne

police officer arrived and took Nelson into custody.

The Hearne officer was Michelle Taylor, who was on the median just outside of Hearne when the Suburban passed her. Her radar showed it was going 93 mph. She activated her emergency lights and went after the Suburban. When she caught up, she saw that there had been a collision and that Nelson was fleeing on foot. After she checked on the car's occupants, Officer Taylor followed Nelson and assisted in arresting him. Officer Taylor testified that all of the air bags had deployed in the car that the Suburban had hit, and she sent the occupants to the hospital. She said that the Suburban could cause death or serious bodily injury when traveling at a high rate of speed.

Nelson testified but did not recall much. He said he had gone for a walk and asked a stranger for a cigarette. It made him feel funny and lightheaded, and in retrospect, he thought it was laced with PCP. He remembered ending up at the carwash and thought that he asked Gutierrez to use her car, but he did not remember threatening her. Nelson said that he drove to Hearne to see his son; he admitted that a man (who was Romero) in a green truck was trying to flag him down, but he did not understand why. He generally recalled driving on the highway. Nelson next recalled being in a wreck, running from the truck because he thought it was going to explode, and the police pointing guns at him.

The jury was instructed that a person commits robbery if, in the course of committing theft, and with intent to obtain or maintain control of another's property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury

or death.  *See* TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011).  The charge defined "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the commission of theft."  *See id.* § 29.01(1).

The crux of Nelson's sufficiency complaint is that there is insufficient evidence he used the Suburban as a deadly weapon during his immediate flight from the carwash.[1]  Nelson argues that his immediate flight ended when Romero had caught up to him at the red light and that there is no evidence of reckless or dangerous driving to that point.  The State disagrees, arguing that Nelson's immediate flight ended when he crashed in Hearne and was caught.  We agree with the State.

Immediate flight is not statutorily defined, but Black's Law Dictionary defines "immediate" as "[o]ccurring without delay; instant," "[n]ot separated by other persons or things," or "[h]aving a direct impact; without an intervening agency."  *Sweed v. State*, 351 S.W.3d 63, 69 n.5 (Tex. Crim. App. 2011) (quoting BLACK'S LAW DICTIONARY 751 (7th ed. 1999)).

The evidence in this case allowed the jury to determine that the wreck and arrest occurred as part of an uninterrupted chain of events immediately following the robbery.  Nelson stopped only because of the wreck, and even then, he continued to flee on foot.  Nelson's reckless driving, culminating in the wreck, supports the jury's finding that he was in immediate flight.  Nothing prevented the jury from concluding that Nelson was in immediate flight until the wreck, and the jury was free to reject Nelson's

---

[1] The State concedes that there is no evidence showing Nelson's use of the Suburban as a deadly weapon at the carwash.

subjective view that he was not fleeing.  We hold that, viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's finding that the Suburban was used or exhibited as a deadly weapon during Nelson's immediate flight from the robbery.  Issue two is overruled.

In issue one, Nelson asserts that he was egregiously harmed by the jury charge's failure to provide all of the law applicable to the deadly weapon issue.  The charge and deadly weapon issue did not specifically instruct the jury that the use or exhibition of a deadly weapon must occur during the offense or immediate flight therefrom, and it did not specifically instruct the jury that it must find the use of a deadly weapon beyond a reasonable doubt.  The charge included definitions of "deadly weapon," "bodily injury," "serious bodily injury," and "in the course of committing theft," and in a special issue asked the jury to find whether Nelson did or did not use or exhibit a deadly weapon, to wit:  a motor vehicle.

The State concedes, and we agree, that the charge should have set forth the applicable law and that the jury must find the use of a deadly weapon beyond a reasonable doubt.  *See Olivas v. State*, 202 S.W.3d 137, 144-45 (Tex. Crim. App. 2006). Nelson concedes that he did not object to the charge's omissions in these respects and that he thus must show egregious harm.  *See id.; Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g) (holding that unobjected-to jury charge error will not result in reversal in the absence of "egregious harm").  In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of

the trial as a whole. *Olivas*, 202 S.W.3d at 144. Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

*The charge itself*: Despite the omitted instructions, the charge did define "deadly weapon," "bodily injury," "serious bodily injury," and "in the course of committing theft." The charge referred to the burden of beyond a reasonable doubt at least four different times, and there was no mention of another possible burden of proof that might apply to the deadly weapon issue. *See Olivas*, 202 S.W.3d at 146. The charge also stated: "The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant." This factor is thus not determinative of egregious harm. *See id.* at 145-47.

*The state of the evidence*: We held above that the evidence is sufficient to support the deadly weapon finding. Nelson has not challenged the sufficiency of the evidence supporting the robbery conviction. This factor weighs against a determination of egregious harm.

*Arguments of counsel*: Nothing in closing arguments suggested to the jury that the deadly weapon issue should be decided on anything less than beyond a reasonable doubt.

*Any other relevant information and the record as a whole*: We find nothing else in the record that would be determinative of egregious harm.

In sum, we cannot say that egregious harm occurred. Issue two is overruled, and we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed November 29, 2012
Do not publish
[CRPM]