**Opinion filed April 30, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00109-CR

_____

## ARTURO B. MENDOZA, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR39381**

### M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Arturo B. Mendoza, Jr., of the offenses of felony driving while intoxicated and evading arrest or detention with a vehicle and, upon finding the enhancement allegations to be true, assessed Appellant's punishment for each offense at confinement for fifty years. The jury also found that Appellant used a "Jeep automobile" as a deadly weapon during the commission of the offense of evading arrest or detention with a vehicle. The trial court ordered Appellant's sentences to run concurrently. We affirm.

In his sole issue on appeal, Appellant challenges the deadly weapon finding. Appellant argues that the evidence was insufficient to support a deadly weapon finding because the evidence failed to demonstrate that any person was actually placed in danger by Appellant's driving.

A vehicle is not a deadly weapon per se, but can be found to be a deadly weapon if it is used in a manner that is capable of causing death or serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2013). To determine whether a motor vehicle was used as a deadly weapon, we first evaluate the manner in which Appellant used the vehicle, including whether he drove dangerously or recklessly or violated traffic laws. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009). Second, we evaluate whether the vehicle was capable of causing death or serious bodily injury. *Id.* To sustain a deadly weapon finding, there must be evidence that others were actually endangered; the mere hypothetical potential for danger if others had been present will not support a deadly weapon finding. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). We must view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found beyond a reasonable doubt that Appellant used or exhibited the Jeep as a deadly weapon when he was evading arrest or detention. *See Sierra*, 280 S.W.3d at 255.

The record shows that Officer William Taylor Welch of the Midland Police Department attempted to conduct a traffic stop of a silver Jeep Cherokee that was traveling over the posted speed limit. Officer Welch activated his emergency lights and siren, but the driver of the Jeep did not pull over. The driver of the Jeep, later identified as Appellant, instead led police on a 30-minute chase. The initial stages of the pursuit occurred inside the city limits, and Appellant drove cautiously. Officer Welch testified that there was heavy traffic on the major roadways that they encountered during the pursuit and that there were "citizens on

the road that were having to stop or get out of the way to avoid the vehicle pursuit." Appellant's cautiousness was aided by Midland police officers who tried to block traffic at major intersections to keep anybody from having a wreck. Appellant eventually left the city limits.

With respect to the traffic outside the city limits on County Road 120 and the Rankin Highway, Officer Welch stated: "There wasn't a whole lot of traffic that we had to pass. There was more traffic . . . coming towards us." Only a center stripe separated the lanes on these roads. Appellant subsequently turned onto FM 1213 and drove in excess of 100 miles per hour on that road. While traveling over 100 miles per hour, Appellant passed a pickup traveling in the same direction and met a "truck-tractor" traveling in the opposite direction. The drivers of those vehicles were "able to get out of the way safely." As Appellant approached a busy highway, he lost control of the Jeep, drove through a barbed-wire fence, and got stuck in a muddy field.

Trooper Robert Donald Manley participated in the last ten minutes of the pursuit. Trooper Manley testified that he and other officers ran into the irrigated field where the Jeep was stuck and yelled at Appellant to stop, turn the vehicle off, and exit the vehicle. Appellant did not comply but, instead, attempted to get the Jeep unstuck and drive away. According to Trooper Manley, Appellant temporarily got the Jeep unstuck and "almost hit a deputy with the vehicle." Officer Welch eventually used his baton and broke the driver's window so that the officers could open the door, extract Appellant from the Jeep, and arrest him.

Appellant appeared to be intoxicated. His blood was drawn at the jail infirmary. Testing showed that Appellant's blood alcohol concentration was 0.24 grams of alcohol per 100 milliliters of blood: three times the legal limit.

In addition to the testimony of the peace officers, a DVD recording of the entire pursuit was admitted into evidence and played for the jury. We have

reviewed the recording and note that, in addition to the excessive speeds driven outside the city limits, Appellant also exceeded the speed limit while in the city limits, failed to stop at numerous stop signs in residential areas, and sped away as an officer attempted to enter the passenger's side of the Jeep when Appellant slowed down at a stop sign.

Although the Jeep did not hit anybody, there were other vehicles on the road with Appellant, including a tanker truck at the busy intersection where Appellant lost control of the Jeep. Officer Welch testified that an intoxicated person driving 112 to 116 miles per hour is a danger to the public and that Appellant could have caused death or serious bodily injury in the manner in which he operated the Jeep during the police pursuit. Furthermore, Appellant almost hit a deputy with the Jeep.

We hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant used the Jeep as a deadly weapon when he was evading arrest or detention. There were people present that were endangered by Appellant's use of the Jeep; the evidence does not reflect a mere "hypothetical potential for danger if others had been present." *See Cates*, 102 S.W.3d at 738. The evidence is sufficient to support the deadly weapon finding. Appellant's sole issue is overruled.

We affirm the judgments of the trial court.


                                                    JOHN M. BAILEY

April 30, 2014                                      JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

4