

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

Nos. 04-22-00638-CR, 04-22-00661-CR, and 04-22-00662-CR

Xavier Deshawn **JOHNSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2020-CR-0264, 2020-CR-0265, and 2020-CR-0266
Honorable Jefferson Moore, Judge Presiding[1]

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: June 12, 2024

AFFIRMED

Appellant Xavier Deshawn Johnson challenges his judgments of conviction for evading arrest, vehicle theft ($30,000 to $150,000), and aggravated assault against a public servant. He argues his counsel failed to render effective assistance, and the record is legally insufficient to support the restitution order. We affirm.

---

[1] The Honorable Jefferson Moore presided over the sentencing hearing and signed the judgment of conviction. The Honorable Raymond Angelini presided over the trial.

## BACKGROUND

In October 2019, Johnson was stopped by a police officer while driving his vehicle in Converse, Texas. He fled the stop in the vehicle, and a car chase then ensued into a nearby neighborhood, where the pursuit continued on foot. During the pursuit on foot, Johnson circled back to the location of his vehicle and the Converse patrol unit SUV. When Johnson reached the vehicles, he attempted to flee driving the patrol unit. The police officer then tried to stop Johnson by opening the driver's door, but Johnson quickly placed the patrol unit in gear and fled the scene. He was eventually apprehended after flipping the patrol unit on a nearby access road.

Johnson was charged with evading arrest, vehicle theft ($30,000 to $150,000), and aggravated assault against a public servant after the Converse police officer sustained minor injuries while trying to apprehend Johnson. *See* TEX. PENAL CODE §§ 22.02(b)(2)(B), 31.03(e)(5) & 38.04. A jury found Johnson guilty, and the trial court sentenced him to terms of ten, ten, and eighteen years, respectively, to be served concurrently in the Texas Department of Criminal Justice Institutional Division.[2]

This appeal followed.

## INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review

Johnson argues his trial counsel's actions were deficient, and he suffered prejudice as a result. We review ineffective assistance of counsel claims under the well-established standard in *Strickland v. Washington*. 466 U.S. 668 (1984). "Evaluating claims of ineffective assistance of counsel under the Sixth Amendment involves a two-pronged test: (1) whether counsel was deficient, and (2) whether the defendant suffered prejudice as a result of counsel's error." *Hart v.*

---

[2] Johnson was also fined $1,500 for each conviction.

*State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (citing *Strickland*, 466 U.S. at 687). "To establish that counsel's actions were deficient, the appellant must show, by a preponderance of the evidence, that counsel's actions fell below an objective standard of reasonableness." *Id.* "There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoting *Strickland*, 466 U.S. at 689) (internal quotation marks omitted). "Courts should consider the reasonableness of counsel's actions at the time, rather than viewing such actions through the benefit of hindsight." *Id.* at 782. "The Court should make this determination in light of all the circumstances in order to determine if the actions fall outside the wide range of professionally competent assistance." *Id.*

To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *Compton v. State*, 666 S.W.3d 685, 714 (Tex. Crim. App. 2023) ("This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (quoting *Strickland*, 466 U.S. at 687)). Failure to show either deficient performance or prejudice defeats an ineffective assistance of counsel claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

## B. Aggravated Assault Against a Public Servant

### 1. Deficient Performance

Johnson first contends his trial counsel's performance was deficient when counsel erroneously believed the manner and means of causing bodily injury was (1) a legally essential element of the aggravated assault against a public servant offense, and (2) not supported by

evidence at trial. A person commits aggravated assault against a public servant if the person commits assault[3] and (1)(a) "causes serious bodily injury to another," or (b) "uses or exhibits a deadly weapon during the commission of the assault," and (2) does so "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant." TEX. PENAL CODE §§ 22.01(a); 22.02(a), (b)(2)(B).[4]

Aggravated assault "is a result-of-conduct crime with the focus or gravamen being the victim and the bodily injury that was inflicted." *Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App. 2012) (footnote omitted) ("What caused the victim's injury is not the focus or gravamen of this offense."). "The precise act or nature of conduct in this result-oriented offense is inconsequential." *Id.* (quoting *Landrian v. State*, 268 S.W.3d 532, 537 (Tex. Crim. App. 2008)) (internal quotation marks omitted). The manner or means "that caused injury does not define or help define the allowable unit of prosecution for this type of aggravated-assault offense." *Id.*; *see, e.g.*, *Hernandez v. State*, 556 S.W.3d 308, 316 (Tex. Crim. App. 2017) ("[T]he fact that Appellant caused . . . bodily injury with his hands not by striking her with them, but instead by choking her, does not make the aggravated assault that was proved at trial different than the aggravated assault that was pled in the indictment." (footnote omitted)).

### a. The Record

Here, the indictment charged Johnson with aggravated assault against a public servant and included the manner and means of the offense. It provides Johnson used and exhibited:

---

[3] A person commits assault if the person intentionally, knowingly, or recklessly (1) causes bodily injury to another, (2) threatened another with imminent bodily injury, or (3) caused physical contact with another when the person knows or should reasonably believe the other will regard the contact as offensive or provocative. TEX. PENAL CODE § 22.01(a).

[4] A "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE § 1.07(17)(B).

a deadly weapon, NAMELY: A MOTOR VEHICLE, THAT IN THE MANNER OF ITS USE AND INTENDED USE WAS CAPABLE OF CAUSING DEATH AND SERIOUS BODILY INJURY, and defendant did intentionally, knowingly and recklessly CAUSE BODILY INJURY to R. LOPEZ . . . by DRIVING SAID DEADLY WEAPON WHILE DRAGGING THE COMPLAINANT . . . .

Throughout trial, the parties referenced the manner and means of the injury multiple times. During voir dire, Johnson's counsel explained that if a person is charged with punching someone and the evidence shows the person kicked the other person, the manner and means was not proven and therefore, the jury should find the person not guilty. And, during opening argument, the prosecutor described the manner of the injury as dragging across the asphalt "where he sustains most of the injuries to his legs."

Then, during the prosecutor's direct examination of Officer Lopez, the following exchange took place:

Q. Explain to the jury what happened step by step as you are entering the vehicle. . . .

A. [Johnson] shuts the door [to my patrol vehicle]. My feet make contact with the ground and that's when I opened the door and I used the force to fling myself inside the vehicle.

Q. . . . When your feet made contact with the ground . . . did the vehicle slowly or quickly begin to go into motion?

A. At some point it did start going into motion.

. . . .

Q. Explain the relation of your feet in relation to the ground.

A. At some point they were dragging on the ground.

. . . .

Q. And did you sustain any injuries from this?

A. I sustained some injuries to my shins.

On cross-examination, Johnson's counsel attempted to get Officer Lopez to explain precisely how he was dragged:

Q. Now as the car begins to move, are you still holding on to him at this point?

A. Yes.

Q. But you claim your feet are on the road?

A. It's a combination. It's a combination of me on the road stepping on the base board and me trying to get into the vehicle. Basically I'm trying to hold on and trying to secure myself in the vehicle, so I won't fall out and get killed or hurt.

. . . .

Q. Mr. Johnson puts it in reverse and is reversing, and you're still holding on to him when that happens?

A. Yes. I believe that's when I got flung out. So I'm in the middle of getting thrown out of the car at that point.

. . . .

Q. Do you remember exactly when you got thrown out?

. . . .

A. Yes. So as he puts it in reverse is when I basically flung out and rolled onto the ground.

. . . .

Q. But the injuries we see in these pictures that were submitted by the State are on the front of your knee and shin?

A. I rolled. . . .

Q. But neither of those injuries were caused by being dragged; would you agree?

A. Probably not on the floor, no. It could have been on the base board.

Q. But as far as injuries caused by being dragged by the vehicle, what injuries did you sustain by being dragged by the vehicle?

A. Aches and pains. . . .

On redirect, Officer Lopez indicated the injuries to his shin could have happened in "a multitude of ways," but reiterated his testimony given during direct examination. And on re-cross, he explained he was actually dragged twice. First, his foot dragged when he got to the patrol unit and attempted to grab Johnson inside the patrol unit. He was then "dragged across the ground" when he was "ejected" from the patrol unit when Johnson put it in gear. He further explained "there's a base board on the foot of my car, so if you're considering where my injuries may have come from, they may have gotten dragged on that base board as my feet are dragging on the floor," and again reiterated his shoes were being dragged on the asphalt. Johnson's counsel appeared confused and sought further clarification by asking Officer Lopez to confirm whether he was touching the vehicle at all at that point when he was being dragged; Officer Lopez responded, "No."[5]

After the State rested, Johnson's counsel moved for a directed verdict, arguing the State presented insufficient evidence to prove the allegations because there was no evidence of "the manner and means as charged in the indictment, that the complainant was dragged by a motor vehicle while it was driving." The motion was denied.

Shortly thereafter, Johnson's counsel re-urged the issue while discussing the jury charge and the anticipated evidence being presented to the jury. The jury charge included the indictment's dragging language and provided the evidence must show beyond a reasonable doubt "Johnson did intentionally, knowingly or recklessly cause bodily injury to R. Lopez, by driving said deadly weapon while dragging R. Lopez."

During closing argument, the State argued the evidence showed dragging as alleged in the indictment, quoting the indictment language and explaining, "[w]e heard Officer Lopez testify

---

[5] Officer Lopez provided similar testimony during the punishment phase of the trial.

how he was dragged due to the defendant's actions and driving." And in his closing argument, Johnson's counsel argued extensively there was no dragging at all, explaining "there has been no evidence, not even remotely, to prove that this officer was ever dragged and received injuries from that."[6]

### b. Analysis

Here, given the lengthy discussions surrounding the manner and means of causing bodily injury, it appears Johnson's counsel may have believed this issue was a legally essential element of aggravated assault against a public servant and clearly believed it was not supported by Officer Lopez's testimony. However, "[c]laims of ineffective assistance must be firmly rooted in the record." *Hart*, 667 S.W.3d at 782; *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021) ("For an appellant to defeat this presumption, '[a]ny allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness.'"). "Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Hart*, 667 S.W.3d at 782 (quoting *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004)); *see Johnson*, 624 S.W.3d at 585 ("Second, it is unclear that counsel's performance was deficient because counsel has not had the opportunity to respond to the claim."). "Given this fact, trial counsel should ordinarily be afforded an opportunity to explain his conduct before being denounced as ineffective." *Hart*, 667 S.W.3d at 782.

---

[6] Johnson's counsel repeated this conclusion regarding the dragging evidence during his closing argument at sentencing.

"In the absence of such an opportunity, when faced with an undeveloped record on direct appeal, [c]ourts commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Hart*, 667 S.W.3d at 782 (alteration in original) (quoting *Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex. Crim. App. 2013)) (internal quotation marks omitted); *Johnson*, 624 S.W.3d at 586 ("Counsel gets the benefit of the doubt from a silent record, and courts must assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined.").

In this case, we must assume Johnson's trial counsel had a strategy if we can imagine any reasonably sound strategic motivation. *See Johnson*, 624 S.W.3d at 586. Here, the indictment specifically addressed dragging as the manner and means of the aggravated assault, Officer Lopez provided conflicting testimony on dragging, dragging was a part of the jury charge, and the State spent a considerable amount of time on it during closing. It is therefore imaginable that Johnson's counsel saw the emphasis on dragging and believed if he did not counter the dragging narrative, the jury would find Johnson guilty because he dragged Officer Lopez.[7] *Id.*

In addition to aggravated assault, Johnson was also tried for theft ($30,000 to $150,000) for stealing the patrol unit, and one element of the crime is the "intent to deprive the owner of the property." *See* TEX. PENAL CODE § 31.03. Therefore, we can imagine Johnson's counsel concluded the jury would treat the dragging testimony as some proof Johnson also intended to deprive Officer Lopez of the patrol unit, thereby committing theft.

In closing, Johnson's counsel argued there was a lack of evidence to show dragging. He may have elected to do so by believing the jury charge made it seem like the State was required to

---

[7] This is particularly the case because as soon as Officer Lopez got back to his patrol unit as Johnson attempted to flee in it, Officer Lopez opened the driver door, began to struggle with Johnson, and his bodycam inadvertently shut off. As a result, there was no footage of what ensued between them thereafter.

prove the manner and means of the injury. At no point did the State dispute it had to prove the manner and means of the injury, and Johnson's counsel seemed to hold the State to that additional burden. *Cf. Brown v. State*, 482 S.W.3d 157, 164 (Tex. App.—Texarkana 2015, no pet.) ("[B]ecause the State used the term beyond all reasonable doubt, but explained the phrase in a manner suggesting that it was synonymous with beyond all doubt, counsel could have decided that it was best to hear which members of the venire would hold the State to a higher standard.").

Because the foregoing reasons constitute reasonable trial strategy that is not so outrageous and unjustified, we cannot conclude, in light of all the circumstances, Johnson has overcome the strong presumption counsel made a reasonable, strategic decision in addressing the issue of the dragging of Officer Lopez. We therefore cannot conclude trial counsel's actions were deficient. *See Hart*, 667 S.W.3d at 784 (concluding, based on undeveloped direct-appeal record, counsel not deficient when counsel elected to argue at punishment phase "[a]ppellant had acted rationally and reasonably in seeking to protect his daughter, rather than pursuing a sudden-passion argument" because "such a strategy is not so outrageous that no reasonable attorney would have engaged in it"); *see, e.g.*, *Johnson*, 624 S.W.3d at 585 (reversing court of appeals finding counsel deficient explaining "there *is* a plausible strategy to explain counsel's failure to introduce Appellant's medical records," which contained appellant's significant criminal history, and "since counsel was not given the opportunity to explain his trial strategy, in the absence of anything in the record to show the tactics or strategic reasoning of counsel, we decline to conclude counsel's performance was deficient"); *see also Prine v. State*, 537 S.W.3d 113, 118 (Tex. Crim. App. 2017) (reasoning even if probation officer opinion inadmissible, decision to call him as witness was strategic choice and evaluating those risks and benefits is type of strategy that ordinarily requires evaluating attorney's explanation before concluding counsel is ineffective).

### c.  Failure to Attack Patrol Unit's Use as Deadly Weapon

Johnson argues, by pursuing the manner and means of causing bodily injury, his counsel's actions were also deficient because he failed to attack the characterization of the patrol unit's use or exhibition as a deadly weapon. Johnson misstates the record; a review of it shows Johnson's trial counsel directly challenged the characterization of the patrol unit's use as a deadly weapon. During Officer Lopez's cross-examination, Johnson's counsel directly confronted Officer Lopez's direct examination testimony suggesting he sustained injury from dragging by Johnson's theft of the patrol unit. And in the penalty phase, Johnson's counsel reiterated during closing argument his client never intended to use the patrol unit as a deadly weapon by fleeing the scene in it.

Even assuming Johnson did not misstate the record, we must assume counsel had a reasonably sound strategic motivation in not challenging the patrol unit's use as a deadly weapon, if we can imagine one. *See Johnson*, 624 S.W.3d at 586. Officer Lopez testified he feared for his life because he was afraid of being run over when Johnson put the patrol unit in drive and began accelerating while Officer Lopez struggled with him.[8] There was also dash cam video evidence showing Johnson entering the patrol unit, and Officer Lopez opening the driver's door just before Johnson had placed the vehicle into gear; the video shows the vehicle accelerating so quickly that its tires spinning in place can be heard.

We can imagine Johnson's counsel employed a reasonably sound strategic motivation by electing not to develop this line of inquiry to avoid additional testimony from Officer Lopez emphasizing his fear for his life as supported by the dash cam. *See* TEX. PENAL CODE § 31.03. Finally, counsel may have also avoided attacking the State's contention the patrol unit was a deadly weapon because he was familiar with caselaw concluding sufficient evidence would have

---

[8] During sentencing, he also testified that in his training and experience a vehicle could be a deadly weapon.

supported the jury's determination Johnson could have used or exhibited the motor vehicle as a deadly weapon. *See, e.g.*, *Sierra v. State*, 280 S.W.3d 250, 256 (Tex. Crim. App. 2009) (concluding when viewed in the light most favorable to verdict, evidence was legally sufficient to support jury's finding SUV was used or exhibited as deadly weapon); *Nguyen v. State*, 506 S.W.3d 69, 77 (Tex. App.—Texarkana 2016, pet. ref'd) (concluding sufficient evidence supported jury's determination that manner in which defendant used his vehicle posed actual danger of death or serious bodily injury); *see also* TEX. PENAL CODE § 1.07(a)(17) (defining "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury").

Because the foregoing reasons constitute reasonable trial strategy that is not so outrageous and unjustified, we cannot conclude, in light of all the circumstances, Johnson has overcome the strong presumption counsel made a reasonable, strategic decision in not attacking the patrol unit's use as a deadly weapon. We therefore cannot conclude trial counsel's actions were deficient. *See Hart*, 667 S.W.3d at 784; *Johnson*, 624 S.W.3d at 585; *Prine*, 537 S.W.3d at 118.

### 2. Prejudice

Finally, Johnson argues that but for trial counsel's deficient performance, a reasonable probability exists he would have received a lesser penalty. We have already concluded counsel's conduct was not deficient, and a failure to show deficient performance defeats an ineffective assistance of counsel claim. *See Hart*, 667 S.W.3d at 781 ("Because we resolve this case on the deficiency prong, we do not address prejudice."); *Thompson*, 9 S.W.3d at 813.

However, even assuming trial counsel's actions were deficient, Johnson's contention he would have received a lesser penalty is, at best, speculative. *See Ex parte Cash*, 178 S.W.3d 816, 818–19 (Tex. Crim. App. 2005) (rejecting contention counsel's actions were prejudicial because counsel's failure to file a motion seeking probation prevented jury from considering probation

during its deliberations, explaining any such finding of prejudice "would be based on pure conjecture and speculation" because jury sentenced applicant to forty-year sentence and not eligible for parole if sentence greater than ten years). During the penalty phase, Officer Lopez's testimony was largely identical to his trial testimony, including that he was dragged.[9] On cross-examination, Officer Lopez admitted he was not sure if his life was in danger when Johnson entered the patrol unit and began fleeing the scene in it. He further testified he agreed any bodily injury he sustained to his knee and shin could have been caused by his jumping over the patrol unit's hood while chasing Johnson. Johnson's mother testified as to his troubled childhood, his struggle with a medical diagnosis related to his mental health, his eventual placement in special education classes, his struggles with anger in school resulting in juvenile detention, and his hospitalization to address his mental health.[10]

During closing argument, Johnson's counsel reiterated his belief the evidence was insufficient to support dragging, and he argued Johnson never intended to use the patrol unit as a deadly weapon by fleeing the scene in it. During its closing, the State asked the trial court to consider a fifty- to seventy-year sentence. At the hearing's conclusion, the trial court declined the State's proposed sentence range, sentencing Johnson to eighteen years for aggravated assault against a public servant, to be served concurrently with his ten-year sentences for his other convictions.[11] There is nothing in the record to suggest he would have received a lesser penalty.

---

[9] While Judge Raymond Angelini presided over Johnson's jury trial, Judge Jefferson Moore presided during the sentencing hearing. Johnson elected to be sentenced by the trial court instead of the jury.

[10] Most of the remainder of the testimony concerned Johnson's prior crimes and his gang affiliation.

[11] Johnson further argues he was prejudiced by having to listen to the State recommend a fifty- to seventy-year sentence. Johnson identifies no support for his contention listening to counsel recommend a sentence constitutes prejudice resulting in ineffective assistance, *see* TEX. R. APP. P. 38.1(i), and we are aware of none.

Accordingly, because we cannot conclude Johnson's trial counsel was deficient or Johnson suffered prejudice as a result, we cannot conclude Johnson's trial counsel rendered ineffective assistance.

## RESTITUTION

Johnson argues the record is legally insufficient to support his restitution order. However, the Court of Criminal Appeals recently held, "[c]hallenges to restitution orders must be raised in the trial court to preserve them for appellate review." *Garcia v. State*, 663 S.W.3d 92, 97 (Tex. Crim. App. 2022) (explaining "restitution complaint should be forfeited by a defendant who foregoes the opportunity to address it in the trial court"). Here, the trial court orally ordered restitution, and Johnson did not object, did not file a motion in response to the trial court's restitution order, and did not raise restitution with the trial court in his motion for new trial. The challenge to restitution is therefore not preserved for appellate review. *See id.*; *Johnson v. State*, 659 S.W.3d 464, 471 n.8 (Tex. App.—Texarkana 2022), *aff'd*, 680 S.W.3d 616 (Tex. Crim. App. 2023); *see also* TEX. R. APP. P. 33.1.

## CONCLUSION

The judgment is affirmed.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH