**Opinion issued July 16, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00834-CR

————————————

**BOOKER NEWSOME, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case No. 1410219**

---

## MEMORANDUM OPINION

Appellant, Booker Newsome, was found guilty by a jury of the offense of aggravated assault of a public servant by using a deadly weapon, namely a motor vehicle. *See* TEX. PENAL CODE ANN. § 22.02(b)(2)(B) (Vernon 2014). After Appellant pleaded true to an enhancement paragraph, the trial court sentenced

Appellant to 20 years in prison.  In one issue, Appellant asserts that the evidence was insufficient to show that he used a motor vehicle as a deadly weapon.

We affirm.

## Background

On December 2, 2013, John Robertson worked as a facilities campus manager for Houston Community College at the central campus.  Robertson was driving around campus in a golf cart when he saw an altercation between Appellant and a young woman.  The woman was yelling at Appellant, asking that he leave her alone.  The woman ran into the middle of the street.  Appellant pushed the woman down, grabbed her hair, and pulled her across the street by her hair.  Robertson told Appellant to stop, but he did not comply.  Robertson informed Appellant that he was calling the police.  Appellant stopped assaulting the woman and began walking across a campus parking lot.

Robertson called 9-1-1.  Officer M. Levene of the Houston Community College Police Department was dispatched to the scene in his marked patrol car.  Once there, Roberts pointed out Appellant, who the officer saw running away.  Driving his patrol car, Officer Levene caught up with Appellant.  Officer Levene got out of his car and yelled for Appellant to stop.  Officer Levene was dressed in uniform.  Appellant was only two to five feet away from Officer Levene.  Appellant looked at Officer Levene and told him, "You're not going to catch me."

2

Appellant continued to run. Officer Levene ran after him. The two ran two loops around the campus parking lot. During the foot pursuit, Officer Levene yelled continually for Appellant to stop and to raise his hands. Appellant did not comply. The foot chase continued for about two minutes until Appellant ran to his car, an Impala.

The car was parked in a parking space in the campus parking lot. When Appellant reached his car, Officer Levene was not far behind Appellant. Appellant got into his car and revved the engine. Appellant then began backing out of the parking space. At that point, Officer Levene was behind Appellant's car, at the mid-point of the car. Officer Levene was less than 20 feet away from the vehicle. The vehicle began reversing; it was heading toward Officer Levene. Officer Levene simultaneously jumped back and drew his firearm, a Glock 21 pistol. Officer Levene yelled at Appellant, ordering him to stop the car. Appellant continued to reverse toward Officer Levene. Officer Levene then fired his service pistol several times into the trunk of Appellant's car. Officer Levene moved into a flanking position, behind Appellant's car. The officer was still behind the vehicle but to the side to allow him to see Appellant. Officer Levene noticed that Appellant had not shifted the vehicle into park; rather, Appellant sat with his foot on the brake. Officer Levene continued to order Appellant to stop the car and to get out. Appellant did not comply. Instead, Appellant's vehicle again reversed

3

toward Officer Levene. To disable the car, Officer Levene again fired his service pistol several times at the back of Appellant's vehicle, flattening its tire. By this point, other police officers had also arrived at the scene. Another police officer who arrived fired a shot at Appellant's car. Neither Appellant nor any other persons were hit with gunfire.

The police ordered Appellant out of the car, but he still refused to get out of the vehicle. He sat gripping the steering wheel. Four police officers wrestled with Appellant to get him out of the vehicle. Appellant was placed under arrest and later charged with the offense of aggravated assault of a public servant. The indictment read as follows:

> [O]n or about December 2, 2013, [Appellant] did then and there unlawfully intentionally and knowingly threaten with imminent bodily injury M. LEVINE [sic], hereafter called the Complainant, while the Complainant was lawfully discharging an official duty, by using and exhibiting a deadly weapon, namely a motor vehicle, knowing that the Complainant was a public servant.

The jury found Appellant guilty of the charged offense. Appellant waived his right to a jury during the punishment phase. Appellant pleaded true to an enhancement allegation in the indictment, which alleged that he had previously been convicted of the offense of possession of a controlled substance with the intent to deliver. Appellant stipulated that he had also committed 11 other felony and misdemeanor offenses, including drug possession, assault, and trespass. The trial court sentenced Appellant to 20 years in prison.

4

Appellant now appeals. He raises one issue in which he asserts that the evidence was not sufficient to support the judgment of conviction.

## A. Standard of Review

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under the single sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See Matlock v. State*, 392 S.W.3d 662, 673 (Tex. Crim. App. 2013); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Pursuant to the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

In our review of the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**B.    Analysis**

As charged in this case, a person commits the offense of aggravated assault of a public servant if the evidence demonstrates that (1) the person intentionally or knowingly threatened another with imminent bodily injury; (2) the person used or exhibited a deadly weapon during the commission of the assault; and (3) the offense was committed against a person the actor knew was a public servant while

the public servant was lawfully discharging an official duty. TEX. PENAL CODE ANN. §§ 22.01(a)(2) (Vernon Supp. 2014), 22.02(a)(2), (b)(2)(B). Appellant asserts that the evidence is insufficient to support the judgment of conviction because the evidence did not show that he used his car as a deadly weapon, as alleged in the indictment.

Section 1.07(a)(17) defines "deadly weapon" as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon 2011); *see Mills v. State*, 440 S.W.3d 69, 72 (Tex. App.—Waco 2012, pet. ref'd) ("Case law has made it clear that the word 'anything' in the definition of a deadly weapon means just that: anything."). "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46).

A motor vehicle can become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Specific intent to use a motor vehicle as a deadly weapon is not required. *Id.* However, to sustain a deadly-weapon finding, there must be evidence that others were "actually endangered;" the mere existence

of a "hypothetical potential for danger" is insufficient. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). To make this determination, we must first evaluate the manner in which the defendant used the motor vehicle during the felony, and then we must consider whether the motor vehicle was capable of causing death or serious bodily injury during the felony. *See Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009).

Here, Appellant asserts the State did not establish that he used his car in a manner that could have caused Officer Levene serious bodily injury because the evidence showed that the car backed out of the parking space at a slow speed and traveled only two feet before stopping. Appellant points out that Officer Levene testified that he jumped out of the way of the vehicle as it came toward him. Appellant asserts that Officer Levene was "never in any real danger of being struck" by the car. Appellant avers that his "manner of starting his parked Impala then slowly travelling backwards two feet posed no danger to the officer, or anyone else." Appellant asserts that "[a]ny danger was simply hypothetical."

The placement of the word "capable" is crucial to understanding the definition in determining deadly-weapon status applicable to this case. *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008) (citing *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)). The State is not required to show the use or intended use causes death or serious bodily injury; it is only required to

show the use or intended use is *capable* of causing death or serious bodily injury. *Id.*

We first address Appellant's assertion that the vehicle's slow speed rendered it incapable of being a deadly weapon. Appellant points to his own trial testimony in which he stated that he backed the car slowly out of the parking spot. John Robertson, the facilities manager who witnessed the incident, also indicated in his testimony that Appellant's car backed slowly out of the spot; however, he testified that it appeared to him that Officer Levene was in danger of being injured by the vehicle. Robertson agreed that Officer Levene would have been injured if he had not gotten out of the car's way.

At trial, the State presented testimony directly addressing the dangerousness of a slow moving vehicle. Officer Stahlin of the Houston Police Department, who conducted an investigation to determine whether Officer Levene had violated the law by his use of his firearm, gave the following testimony:

> Q. And did you take into account [in your investigation] the fact that you didn't know how fast or slow [the car] was going and how far it traveled back in making the determination if the officer [Officer Levene] still acted within the bounds of the law?
>
> A. From my experience, I know that a car that is moving slow can still knock you to the ground and even if that car is still moving slow, if

you get caught underneath it, it can cause serious bodily injury or death.[1]

Thus, the State presented evidence from which the jury could have reasonably inferred that the car posed an actual danger to Officer Levene regardless of its speed. The danger was not merely hypothetical.

In addition, the facts that the vehicle traveled only a short distance, that Officer Levene was 10 to 20 feet away from the vehicle, and that Officer Levene jumped out of the way of the car do not show that there was no actual danger to Officer Levene. Robertson and Officer Levene testified that Appellant revved his engine before backing out of the space. Officer Levene stated that, when he heard the engine rev, he thought that Appellant "was going to run me over." Robertson and Officer Levene testified that Officer Levene was behind the car when Appellant was reversing. Robertson agreed that Officer Levene would have been injured had the officer not moved out of the car's way.

Further, the evidence showed that Officer Levene believed that he was justified in using force to stop the car as it backed toward him. Evidence was presented that an internal police investigation also determined that Officer Levene

---

[1] When asked why he used that description, Officer Stahlin stated that "they are the legal words used that kind of justify force." Officer Levene was never indicted for any crime associated with the incident. The evidence also showed that an investigation by the Houston Community College Police Department determined that Officer Levene's use of force had been justified and that he had not violated any law or any internal department policy.

had been justified in his use of force. And, despite the fact that Officer Levene had shot the car a number of times, Appellant continued to back up his car a second time. The evidence showed that Appellant stopped the vehicle because Officer Levene shot its tire, disabling it. In other words, the vehicle traveled only a short distance because Officer Levene was effective in defending himself and stopping the car. Contrary to Appellant's position, Officer Levene's ability to thwart Appellant's escape and jump out of the way of the car does not serve to negate the evidence showing that Officer Levene was in actual danger of serious bodily injury or death before the vehicle stopped.

Moreover, the plain language of the deadly-weapon provision does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor *intends a use* of the object in which it would be capable of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (emphasis added).

Here, evidence was presented to show that Appellant intended to use the car in a manner that was capable of causing serious injury or death. Robertson and Officer Levene testified that Appellant revved his engine backing out of the space, causing Officer Levene to think that Appellant "was going to run me over." Officer Levene's and Robertson's testimony indicated that Officer Levene would have been injured had he not moved out of the car's path.

In his defense, Appellant testified that he had no intention of running over Officer Levene.  Appellant claimed that he did not know Officer Levene was pursuing him and he did not know that the officer was behind his car.  He stated that he never heard Officer Levene yelling for him to stop either during the foot pursuit or while he was in his car.  Appellant also stated that he had not intended to back up the second time, claiming that his foot had slipped off the brake.

In contrast, the State presented evidence indicating that Appellant knew that he was being pursued by Officer Levene and that Officer Levene was behind the car.  The evidence showed (1) Appellant told Officer Levene that he was not going to catch him; (2) Officer Levene chased Appellant on foot for two minutes, circling the parking lot; (3) Officer Levene shouted for Appellant to stop during the foot chase; (4) Appellant got in his car and revved the engine; (5) Officer Levene yelled, ordering Appellant to stop the car; (6) Robertson and another officer arriving at the scene heard Officer Levene yelling at Appellant while Appellant was in the car; (7) Officer Levene was behind Appellant's car, when he reversed; (8) Officer Levene felt threatened to the point that he drew his weapon and fired several times into the trunk of Appellant's car; (9) Appellant stopped the car, but did not shift it into park; (10) Officer Levene continued to order Appellant to stop the car; and (11) Appellant continued to back up his car.  From this evidence the jury could have reasonably inferred that Appellant was aware that he was being

pursued by Officer Levene, that he was aware that Officer Levene was behind his vehicle, and that Appellant intended to use the car in manner rendering it capable of causing serious injury or death to Officer Levene.

Viewing the evidence in a light most favorable to the verdict, we conclude that, in the manner Appellant used or intended to use it, a rational fact finder could have found beyond a reasonable doubt that the car was capable of causing death or serious bodily injury; that is, the jury could have found the car was a deadly weapon under the circumstances. We hold that the evidence is sufficient to support the judgment of conviction for the offense of aggravated assault of a public servant by using a deadly weapon.

We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


                                        Laura Carter Higley
                                        Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).